1  JEREMY V. RICHARDS (CA SBN 102300)
   GAIL S. GREENWOOD (CA SBN 169939)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA  90067
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760
   E-mail:   jrichards@pszjlaw.com
5            ggreenwood@pszjlaw.com

6  Attorneys for Official Committee of Unsecured Creditors
   of Liberty Asset Management Corporation

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11 | In re:                                  | Case No.:  2:16-bk-13575-TD

12 | LIBERTY ASSET MANAGEMENT                | Chapter 11
   | CORPORATION, a California corporation,  |
13 |                                         | Adv. No. 2:16-ap-01337-TD
   |                 Debtor and              |
14 |                 Debtor in Possession.   | **DECLARATION OF SHAO FANG HUANG
   |                                         | IN SUPPORT OF THE COMMITTEE'S
15 |                                         | MOTION FOR SUMMARY
   |                                         | ADJUDICATION OF DEFENDANTS'
16 |                                         | LIABILITY FOR BREACH OF
   |                                         | FIDUCIARY DUTIES AND ACCOUNTING**
17 |                                         |

18 | OFFICIAL UNSECURED CREDITORS            | Date:   December 15, 2016
   | COMMITTEE FOR LIBERTY ASSET             | Time:   11:00 a.m.
19 | MANAGEMENT CORPORATION,                 | Place:  Courtroom 1345
   |                                         |          255 E. Temple Street
20 |                 Plaintiff               |          Los Angeles, CA 90012
   |                                         | Judge Thomas B. Donovan
21 |                 vs.                     |

22 | LUCY GAO, an individual, and BENJAMIN
23 | KIRK, an individual,

24 |                 Defendants

25

26         I, Shao Fang Huang, declare as follows:

27         1.      I am the Manager of Lee Walgreens 2013 LLC ("Lee Walgreens"), an entity that

28 entrusted $3 million to the Debtor for investment.  I submit this declaration in support of the *Motion*

*(left margin, vertical text)* PACHULSKI STANG ZIEHL & JONES LLP — ATTORNEYS AT LAW — LOS ANGELES, CALIFORNIA

*for Summary Adjudication of Defendants' Liability for Breach of Fiduciary Duty and Accounting*
(the "Motion") filed concurrently by the Committee.[1]  Except as otherwise noted, I have personal
knowledge of the matters set forth herein.

2.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of the investment agreement
between Lee Walgreens and the Debtor, entitled Disclosure Acknowledgement and Commitment to
Purchase and Sell Real Estate Assets Agreement and dated March 23, 2013 (the "Investment
Contract").  Pursuant to the Investment Contract, the Debtor was obligated to attempt to purchase
real estate located at 3931 Alemany Boulevard in San Francisco (the "Target Property") upon receipt
of Lee Walgreens' deposit.

3.     Attached hereto as <u>Exhibit B</u> is a true and correct copy of the escrow wiring
instructions and the bank's wire confirmation reflecting Lee Walgreens' deposit of $3 million[2] (the
"Lee Walgreens Deposit") with Sincere Escrow on March 26, 2013.

4.     Attached hereto as <u>Exhibit C</u> is a true and correct copy of the first amendment of the
Investment Contract between Lee Walgreens and the Debtor, entitled Addendum to Disclosure
Acknowledgement and Commitment to Purchase and Sell Real Estate Assets Agreement and dated
September 9, 2013 (the "First Amended Investment Contract").  Pursuant to the First Amended
Investment Contract, the closing date for the purchase of the Target Property was extended to June
26, 2014.

5.     Attached hereto as <u>Exhibit D</u> is a true and correct copy of the second amendment of
the Investment Contract between Lee Walgreens and the Debtor, entitled Addendum to Disclosure
Acknowledgement and Commitment to Purchase and Sell Real Estate Assets Agreement and dated
September 9, 2014 (the "Second Amended Investment Contract").  Pursuant to the Second Amended
Investment Contract, the closing date for the purchase of the Target Property was further extended to
June 26, 2015.

6.     Attached hereto as <u>Exhibit E</u> is a true and correct copy of the cancellation of the
Investment Contract between Lee Walgreens and the Debtor, entitled Cancellation of Disclosure

---

[1] Undefined capitalized terms contained in this declaration have the meaning ascribed to them in the Motion.
[2] The bank account numbers are partially redacted.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Acknowledgement and Commitment to Purchase and Sell Real Estate Assets Agreement and dated

2    March 26, 2015 (the "Canceled Investment Contract").  Pursuant to the Canceled Investment

3    Contract, the Debtor shall fully refund the Lee Walgreens Deposit on or before May 31, 2015.

4        7.    To date, the Debtor did not purchase the Target Property, nor has it refunded the Lee

5    Walgreens Deposit.

6        I declare under penalty of perjury under the laws of the United States of America that the

7    foregoing is true and correct. Executed this 31st day of October, 2016 at Los Angeles, California.

8

9

10                    Shao Fang Huang

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:92041.1 52593/002

# Exhibit "A"

# LIBERTY ASSET MANAGEMENT CORPORATION

### DISCLOSURE ACKNOWLEDGMENT AND COMMITMENT TO PURCHASE AND SELL REAL ESTATE ASSETS AGREEMENT

Between

## Liberty Asset Management Corporation
### ("LAMC")

and

## Lee Walgreens 2013 LLC
### ("Investor")

Effective
## March 23, 2013

---

 # LIBERTY ASSET MANAGEMENT CORPORATION

### DISCLOSURE ACKNOWLEDGMENT AND COMMITMENT TO PURCHASE AND SELL REAL ESTATE ASSETS AGREEMENT

This Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement ("Agreement") is executed on this _21st_ day of _March_ 2013 by and between Liberty Asset Management Corporation and its respective parent or subsidiary companies and affiliates, ("LAMC"), a California Corporation whose principal place of business is located at 3218 E. Holt Avenue #101, West Covina, CA 91791, and _Lee Walgreens 2013 LLC_ ("Investor") whose name, phone number and address are listed below.

> ("INVESTOR"): Lee Walgreens 2013 LLC
> Name:    Shao Fang Huang
> Title:     Manager
> Address:  1906 El Camino Real, Menlo Park, CA 94025

**PURPOSE**

This Agreement sets out the terms and conditions on which:

1.  LAMC will purchase on behalf of Investor and then sell to Investor the real property and/or non-performing notes for real property as described in Schedule 1 (hereinafter referred to as "Real Estate Assets" or "Real Estate Asset" either collectively or individually as indicated by the context); and
2.  Investor will purchase from LAMC the Real Estate Assets as described in Schedule 1 that LAMC purchased on Investor's behalf.

**WHEREAS,**

1.  LAMC is a legally established and duly organized California Corporation and undertakes to purchase Real Estate Assets as described in Schedule 1 on behalf of Investor.
2.  Investor is a legally established and duly organized California [Lee Walgreens 2013 LLC], desirous of purchasing from LAMC the Real Estate Assets as described in Schedule 1 subject to applicable laws as may be amended from time to time and conditions hereinafter provided.
3.  LAMC and Owner hereto are entering into this Agreement to set out the terms by which LAMC will purchase on behalf of Investor and sell to Investor the Real Estate Assets as described in Schedule 1 and Investor will purchase from LAMC the Real Estate Assets described in Schedule 1 that LAMC purchased on Investor's behalf.

**NOW THEREFORE,** the parties hereto hereby agree as follows:

1.  **INVESTOR'S ACKNOWLEDGMENTS**

    1.1   Investor hereby acknowledges and understands they are solely responsible for completing their own independent investigation and/or inspection of the Real Estate Assets described in Schedule 1.

    1.2   Investor acknowledges and understands the terms of the Sale and Purchase Agreement of the Real Estate Assets. Investor has, to its satisfaction had a full opportunity to make a fully informed decision.

    1.3   Investor recognizes and acknowledges that the contractual obligation to purchase the Real Estate Assets contained in Schedule 1 which is the subject of this Agreement is accompanied by an obligation to accept the terms and condition of the Sale and Purchase Agreement of the Real Estate Assets without material modification.

    1.4   **INVESTOR ACKNOWLEDGES THAT IT HAS BEEN ADVISED THAT EXECUTION OF THIS AGREEMENT BINDS INVESTOR TO CERTAIN CONTRACTUAL OBLIGATIONS, INCLUDING THE PURCHASE OF THE REAL ESTATE ASSETS CONTAINED IN SCHEDULE 1 AND TO THE EXECUTION OF THE SALE AND PURCHASE AGREEMENT, A COPY OF WHICH WAS PROVIDED TO INVESTOR. INVESTOR HAS HAD FULL OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL AND OTHER PROFESSIONALS FOR ADVICE AND CONSULTATION ON ALL THE IMPLICATIONS, RISKS, REWARDS AND OBLIGATIONS AND COMMITMENTS INHERENT IN ANY AND ALL OF THE SAME.**

    Investor's Initials_____ _S.H_

    1.5   **INVESTOR FURTHER ACKNOWLEDGES, AGREES AND AFFIRMS THAT EXECUTION OF THIS AGREEMENT IS, IN FACT, A KNOWING AND INFORMED ACT OF THE INVESTOR AND THE INVESTOR HAS EXERCISED INDEPENDENT JUDGMENT, HAS BEEN SUPPLIED ALL DATA, INFORMATION, AND MATERIALS REQUESTED OF LAMC THAT LAMC HAS AVAILABLE AND HAS CONCLUDED BY INDEPENDENT ANALYSIS, INVESTIGATION AND INQUIRY TO PROCEED WITH THE PURCHASE OF THE REAL ESTATE ASSETS CONTAINED IN SCHEDULE 1.**

    Investor's Initials_____ _S.H_

006

1.6     Investor acknowledges an understanding of the risks involved in participating in real estate ownership and that the Investor is an experienced purchaser or owner of real estate or is being advised in such matters by third-party independent professionals having expertise and knowledge regarding real estate.

    1.6.1   Risks may include but are not limited to the following: foreclosure may be necessary; the Real Estate Assets cannot be inspected on the interior; the physical condition and/or the state of repairs needed cannot be determined; there may be illegal additions which may not be to city or governmental code; there may be undisclosed environmental conditions; there may be occupants that need to be evicted.

1.7     Investor acknowledges that returns are subject to change due to loan terms, new discovery, occupancy, additional capital investment, owner decisions, and various factors involved in property management.

1.8     Investor further acknowledges that LAMC has disclosed to the Investor that the actual purchase and acquisition of the Real Estate Assets contained in Schedule 1 will depend on factors independent of the Investor's involvement, to include the commitment of sufficient additional co-purchasers/co-owners to provide the requisite portion of the overall purchase price needed beyond the mortgage loan financing that is also required before the acquisition and purchase can be completed.

1.9     Investor acknowledges that LAMC has agreed to exercise good faith efforts to obtain the requisite commitments by co-purchasers/co-owners and also to obtain the requisite mortgage financing but also acknowledges and agrees that there has not been any guaranty or assurance by LAMC that the same can be accomplished on a schedule necessary to proceed to the closing and purchase of the Real Estate Assets contained in Schedule 1.

1.10    **THE INVESTOR ACKNOWLEDGES THAT LAMC IS NOT THE CURRENT OWNER OF THE REAL ESTATE ASSETS CONTAINED IN SCHEDULE 1 BUT HAS THE SAME UNDER PURCHASE CONTRACT WITH ITS RIGHTS AS PURCHASER THEREUNDER FREELY ASSIGNABLE TO THE INVESTOR AND THE OTHER CO-PURCHASERS/CO-OWNERS WHO WILL BE INVOLVED IN THE PURCHASE.**

    **Investor's initials** _____

1.11    Investor acknowledges that LAMC has informed the Investor that while LAMC will endeavor, in good faith, to cause the closing and purchase of the Real Estate Assets contained in Schedule 1 in order to meet Investor's deadlines that have been disclosed by Investor, in writing, to LAMC, LAMC cannot and does not guaranty, warrant or otherwise commit to actually meet such deadlines and the Investor fully agrees and acknowledges that the risk of not meeting such deadlines shall be fully and completely the responsibility of Investor without recourse to LAMC.

1.12    Investor acknowledges that Investor shall pay all recording costs, property taxes and Natural Hazard Disclosures. Investor shall pay all documentary or other transfer taxes applicable to the sale. Investor shall pay for the premium for the Title Policy (to the extent it does not exceed the cost of a CLTA policy). Investor shall pay the premium for the Title Policy to the extent not required to be paid by LAMC. Investor shall pay all charges of the escrow for the sale.

1.13    Investor acknowledges that Investor shall pay all legal and administrative expenses relating to non-performing notes, foreclosure, and property maintenance including, but not limited to, delinquent taxes, liens, attorneys' fees, trustee fees, note servicing fees, mortgage services, eviction fees, property insurance, property management fees, property repairs, property maintenance and service fees, and other foreclosure, legal, and administrative fees.

1.14    **AUTHORIZATION TO RELEASE ESCROW FUNDS**
    **THE INVESTOR HEREBY ACKNOWLEDGES AND AUTHORIZES Sincere Escrow Services ("ESCROW COMPANY") TO RELEASE FUNDS HELD IN ESCROW IN THE AMOUNT OF $5,900,000.00 TO LAMC IN ORDER TO CAUSE THE CLOSING AND PURCHASE OF THE REAL ESTATE ASSETS CONTAINED IN SCHEDULE 1. LAMC MAY PROVIDE A COPY OF THIS AGREEMENT TO THE ESCROW COMPANY AS EVIDENCE OF SUCH AUTHORIZATION. THE INVESTOR FURTHER ACKNOWLEDGES AND AGREES TO HOLD LAMC HARMLESS FOR THE RELEASE OF ESCROW FUNDS AUTHORIZED HEREBY.**

    **Investor's initials** _____

2.  **REPRESENTATIONS, WARRANTIES, AND COMMITMENTS**

2.1     Each party to this Agreement makes the following representations, warranties and commitments to the other party:

    2.1.1   It has full rights and authorization, including but not limited to approvals, consents or licenses from relevant governmental departments, as well as the internal authorizations of the company to enter into this Agreement and has taken all necessary action (corporate, statutory, contractual or otherwise) to authorize execution, delivery and performance of this Agreement in accordance with its terms; and

2.1.2   This Agreement shall become binding and enforceable after it comes into effect by the means stipulated in this Agreement.

2.1.3   By execution hereof, and in connection with this Agreement, LAMC and Investor are committing and agreeing to enter into the formal Sale and Purchase Agreement of the Real Estate Assets contained in Schedule 1.

2.1.4   By execution hereof, and in connection with this Agreement, LAMC and Investor are committing and agreeing to enter into the Real Property Management Agreement for the Real Estate Assets contained in Schedule 1.

2.2   Investor makes the following additional representations, warranties and commitments to LAMC:

2.2.1   It is committing and agreeing to purchase the Real Estate Assets contained in Schedule 1 which LAMC purchased on its behalf, from LAMC; and

2.2.2   It is committing and agreeing to purchase the Real Estate Assets contained in Schedule 1 for approximately $5,900,000.00.

2.2.3   It is authorizing the release of funds held in escrow to LAMC solely for the purpose of purchasing the Real Estate Assets contained in Schedule 1.

2.3   LAMC makes the following additional representations, warranties and commitments to Owner:

2.3.1   It has disclosed or will disclose to Investor any and all information it has regarding the Real Estate Assets contained in Schedule 1 that could affect the value of any one or more of the individual assets contained in Schedule 1.

2.3.2   It shall timely deliver all additional information requested by the Investor and agreed to by LAMC, to the location named by Investor in this Agreement.

2.3.3   It is committing and agreeing to sell the Real Estate Assets contained in Schedule 1 to Investor for approximately $5,900,000.00; and

2.3.4   To the best of its knowledge after a reasonable investigation it is unaware of any pending or threatened litigation against LAMC or the Real Estate Assets contained in Schedule 1 which might adversely affect any one or more of the Real Estate Assets contained in Schedule 1 or LAMC's ability to convey the same.

3.   SCOPE

3.1   For the consideration and on the terms and conditions contained herein LAMC agrees to purchase on behalf of Investor the Real Estate Assets contained in Schedule 1 and in turn sell the Real Estate Assets contained in Schedule 1 to Investor.

3.2   For the consideration and on the terms and conditions contained herein Investor agrees that once LAMC has purchased the Real Estate Assets contained in Schedule 1, Investor will purchase the Real Estate Assets contained in Schedule 1 from LAMC pursuant to the terms and conditions stated in the Purchase and Sale Agreement.

3.3   This Agreement is without prejudice to any other terms issued to the Investor by LAMC or agreements entered into between the Investor and LAMC which may relate to an individual asset contained in the Investor's portfolio of real estate assets including, without limitation, any master agreements relating to the purchase or sale of a real estate asset. If any provision in this Agreement conflicts with a provision of any other agreement the latter provision shall prevail insofar as it does not conflict with any of LAMC's duties or obligations under this Agreement or other relevant law.

4.   CONDITIONS OF SALE BY LAMC AND PURCHASE BY INVESTOR

4.1   LAMC has reserved the right to invite two or more bidders to complete their own independent investigation and/or inspection of the Real Estate Assets described in Schedule 1 ("Due Diligence") and to submit non-contingent offers on the Real Estate Assets contained in Schedule 1 ("Final Bid").

4.2   Investor's Final Bid is due by 4:00 p.m. Pacific Time on [March 24, 2013]. Investor's failure to submit a timely Final Bid will be construed as a termination of this Agreement.

4.3   The Indicative Bid shall mean the price Investor has offered, prior to Due Diligence, to pay for the Real Estate Assets contained in Schedule 1, expressed as a percentage of the sum of all seller values of the Real Estate Assets contained in Schedule 1 prior to the closing date, and subject to modification as permitted herein upon the satisfactory completion of Due Diligence. The Indicative Bid is $5,900,000.00.

4.3.1   If the Investor's Final Bid falls below the Indicative Bid, LAMC is not obligated to accept the Final Bid, the amount of any other bid received notwithstanding.

4.4   In the event LAMC's internal price benchmarks are not met, LAMC may withdraw any or all of the Real Estate Assets contained in Schedule 1 and shall have no obligation to reimburse Investor's expenses.

4.5   Investor shall have the right to reject any Real Estate Asset contained in Schedule 1 whose characteristics deviate materially from the information that has been provided to Investor by LAMC.

4.5.1   If Investor chooses to reject any Real Estate Asset contained in Schedule 1: (a) LAMC shall have the right to reject or re-price the offer in its entirety and (b) LAMC shall have the right to remove the rejected Real Estate Asset and replace it with another real property or non-performing note for real property of substantially the same or similar characteristics subject to Investor's approval.

4.6   LAMC shall have the right to remove a Real Estate Asset from Schedule 1 without replacement at any time up to the delivery of funds from Investor to LAMC and the commencement of LAMC's obligation to transfer ownership of the Real Estate Asset ("Closing Date") due to asset disposition through other methods or for reasons related to title defect, litigation, invalid foreclosure sale or bankruptcy.

4.7   The parties' respective obligations to consummate the transaction contemplated herein shall be subject to, and conditioned upon, the following:

4.7.1   Investor being satisfied, in its sole and absolute discretion, with Investor's Due Diligence;

4.7.2   The execution of the formal Purchase and Sale Agreement;

4.7.3   Delivery of Escrow Tax Pro-ration Accounting;

4.7.4   The delivery by Investor to LAMC of satisfactory evidence of compliance with all applicable federal and state laws necessary to conduct business and to acquire the Real Estate Assets contained in Schedule 1 by means of the transaction contemplated herein;

4.7.5   Upon award of the Real Estate Assets contained in Schedule 1 to LAMC, and no later than [March 26, 2013], Investor shall pay to LAMC the first deposit in the amount of $3,000,000.00; and will obtain the mortgage in the amount of $2,900,000.00.

4.7.6   LAMC shall inform Investor of the deposit amount no later than one business day in advance of the date it is due;

4.7.7   If Investor fails to consummate the purchase contemplated herein, and LAMC is in compliance with the terms of this Agreement and the Purchase and Sale Agreement, LAMC shall be entitled to retain the deposit; and

4.7.8   Closing shall occur on or before [June 26, 2013], or such other date mutually acceptable to Investor and LAMC with the balance of the purchase price to be tendered to LAMC by bank wire no later than the mutually agreed upon date.

5.   CONFIDENTIALITY

5.1   LAMC and Investor agrees that all information and recommendations provided to the other shall be treated as confidential ("Confidential Information").

5.2   LAMC and Investor agree that no Confidential Information will be disclosed without prior consent of the other party unless:

5.2.1   Required by law, Court Order or agency directive, or

5.2.2   Unless LAMC or Investor expects, in its reasonable opinion, that LAMC or Investor will be compelled by a court or government agency, to make such disclosure or unless such Confidential Information becomes publicly available or known other than as a result of actions of LAMC or Investor.  In the event LAMC is compelled to disclose confidential information by legal process, LAMC or Investor will use its best efforts to give written notice to Investor or LAMC prior to such disclosure.

5.2   The provisions of Section 5 shall survive termination or expiration of this Agreement.

**6.   FORCE MAJEURE**

6.1   If either LAMC or Investor fails to perform in whole or in part its duties under this Agreement due to an event of force majeure, the performance of such duties shall be suspended during the period of such event of force majeure.

6.2   The party affected by an event of force majeure shall not be in breach of this Agreement if there is any loss or damage, and shall not be liable or responsible for any loss or damage incurred by the other party as a result of any total or partial failure, interruption or delay in performance of its duties and obligations occasioned by an event of force majeure.

6.3   A party that claims that it has been affected by an event of force majeure shall notify the other party of such event of force majeure in writing in the shortest period possible, and shall provide appropriate evidence of the existence and period of the event of force majeure to the other party within fifteen (15) calendar days after its occurrence. A party that claims that the performance of this Agreement is objectively impossible and impractical due to such event of force majeure shall take any reasonable measures to lessen the losses caused by such event of force majeure.

6.4   When the event of force majeure occurs, the parties shall consult with each other regarding the performance of this Agreement. Once the event of force majeure or its effects ceases, both parties shall immediately resume the performance of their respective obligations.

6.5   An event of force majeure refers to any circumstances that cannot be reasonably controlled, predicted, avoided or overcome, and occurs after execution of this Agreement, which make the performance of this Agreement in whole or in part impossible or impracticable as a matter fact, including but not limited to any situation where performance is impossible without unreasonable expenditure. Such circumstances include but are not limited to floods, fires, droughts, typhoons, earthquakes, and other acts of God, traffic accidents, strikes, riots, turmoil and wars (declared or not) and any act or omission of a governmental authority beyond the control of either party.

**7.   TERMINATION**

7.1   LAMC has the right to terminate this Agreement at any time if it has reason to believe that the conditions specified in this Agreement are not complied with by written notice of termination to the Investor.

7.2   Investor has the right to terminate this Agreement at any time if in the course of its Due Diligence, Investor discovers that the actual status of the Real Estate Assets contained in Schedule 1 is materially different from the information previously provided by LAMC to Investor or Investor is otherwise dissatisfied with its Due Diligence by giving written notice to LAMC.

7.3   Upon termination of this Agreement by LAMC or Owner, neither LAMC nor Investor shall have any further obligations to consummate the transaction contemplated herein.

**8.   ASSIGNMENT**

8.1   This Agreement is not assignable unless all parties agree in writing.

**9.   NON-WAIVER**

9.1   Failure of either party to object to or take other action with respect to any conduct of the other party that may be a breach of this Agreement shall be deemed a waiver of any breach or of any future breach of wrongful conduct.

**10.   SEPARABILITY**

10.1   If any provision of this Agreement or its application to any person or entity or circumstance is found to be invalid or unenforceable, the remainder of this Agreement or its application to other persons or circumstances shall not be affected and shall remain in full force and effect.

**11.   ENTIRE AGREEMENT**

11.1   This Agreement contains the entire understanding of the parties. Any oral understandings are incorporated and merged in this Agreement. No representations were made or relied upon by either party except for as set forth. This Agreement may not be changed unless all parties agree to the change in writing.

**12.   NOTICES**

12.1   Any and all notices, designations, consents, offers, acceptances, or any other communications provided herein shall be given in writing and shall be deemed to have been duly given, if:

12.1.1   Delivered personally;

12.1.2   Transmitted by prepaid facsimile, telegram or telex, if confirmed within twenty-four (24) hour thereafter by a signed original;

12.1.3   Sent by a nationally recognized express courier service, postage or delivery charges prepaid, then such items shall be presumed delivered within one (1) business day thereafter; or

12.1.4   Sent by certified mail, return receipt requested.

12.2   Notices shall be sent to the following addresses

12.2.1   LAMC
Attn: Vanessa Lavendera
3218 E. Holt Avenue #101
West Covina, CA 91791
Phone Number: (626) 214-2154
Fax: (626) 214-2143

12.2.2   INVESTOR: Lee Walgreens 2013 LLC
Address: 1906 El Camino Real, Menlo Park, CA 94025
Phone Number:

## 13. GOVERNING LAW

13.1   The validity, interpretation, and performance of this Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of California.

Liberty Asset Management Corporation

Investor
Lee Walgreens 2013 LLC

03/23/2013
Date

Manager

Manager: Shao Fang Huang

03/23/2013
Date

---

Proprietary and Confidential    Investor's initials _____    LAMC's initials _____    Page 7 of 8

011

# SCHEDULE 1
## REAL ESTATE ASSETS

**REAL PROPERTY**

| Address | City | State | Zip | Acquisition Value |
|---|---|---|---|---|
| 3931 Alemany Blvd | San Francisco | CA | 94132 | $5,900,000.00 |
| (Walgreens) | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Proprietary and Confidential    Investor's initials _____    LAMC's initials _____    Page 8 of 8

012

# Exhibit "B"

 **Sincere Escrow**
935 S. San Gabriel Blvd.
San Gabriel, CA 91776
Tel: (626) 286-1880
Fax: (626) 286-2983

Please find below Wiring Instructions for Escrow No. 013665-MC

All funds wired should be directed to:

| | |
|---|---|
| Bank | Citizens Business Bank |
| Address | 701 North Haven |
| City/State | Ontario, CA 91764 |
| ABA | 122234149 |
| Credit to | SINCERE ESCROW |
| Account No. | ████1991 |
| Reference | Margaret Chiu, Escrow Officer<br>Escrow No. 013665-MC |

If you have any questions regarding this matter, please do not hesitate to contact this office.



**HSBC** ◀▶

09 SEPT 2015

ANSON WELL INTERNATIONAL LIMITED
4/F HODY COMMERCIAL BUILDING
6-6A HART AVENUE
TSIMSHATSUI KOWLOON
HONG KONG

**HSBC Private Bank**
Levels 13 and 14
1 Queen's Road Central
Hong Kong

Tel  +852 2899 8/77
Fax  +852 2899 0085

www.hsbcprivatebank.com

Dear Sir,

Re: A/C No.▮▮▮▮▮▮▮▮-0002 of ANSON WELL INTERNATIONAL LIMITED
    Outward Payment for USD3,000,000.00 value on 26 Mar 2013

As per your request of 02 sept 2015, we would like to confirm the details of subject
payment as follows:

      Payment Amount        : USD3,000,000.00
      Value date             : 26 Mar 2013
      Beneficiary Bank Name  : Citizens Business Bank
                           701 North Haven, Ontario, CA 91764
                           Bank Routing No : 122234149
      Beneficiary Name      : Sincere Escrow
      Beneficiary Account No : ▮▮▮▮1991
      Payment Details       : Margaret Chiu, Escrow Officer
                           Escrow No : 013665-MC
                           Property purchased by "Lee Walgreens
                           2013LLC" Location :3931 Alemany Blvd
                           S.F.CA 94132.

Please be advised that the information in this letter is prepared at your request and
solely for your reference and convenience. You should not take any action in reliance
on this report, and the official advice and statement of account issued by the Bank
shall prevail in all cases.

Yours faithfully
For and on behalf of
The HongKong and Shanghai Banking Corporation Limited,
Private Banking Division

Authorized Signatures

HSBC Private Bank is a division of The Hongkong and Shanghai Banking Corporation Limited

# Exhibit "C"



# LIBERTY ASSET MANAGEMENT CORPORATION

## ADDENDUM TO
## DISCLOSURE ACKNOWLEDGMENT AND COMMITMENT TO PURCHASE
## AND SELL REAL ESTATE ASSETS AGREEMENT

Between

**Liberty Asset Management Corporation**
(*"LAMC"*)

and

**Lee Walgreens 2013 LLC**
(*"Investor"*)

Effective
**September 9, 2013**

017

 **LIBERTY ASSET MANAGEMENT CORPORATION**

### ADDENDUM TO
### DISCLOSURE ACKNOWLEDGMENT AND COMMITMENT TO PURCHASE AND SELL REAL ESTATE ASSETS AGREEMENT

This Addendum to the Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement ("Addendum") is made and entered into as of 9th day of September 2013 ("Effective Date"), and is hereby made part of and incorporated into that certain Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement dated 23rd day of March 2013 ("Agreement") by and between Liberty Asset Management Corporation and its respective parent or subsidiary companies and affiliates, ("LAMC"), a California Corporation whose principal place of business is located at 3218 E. Holt Avenue, Suite 101, West Covina, CA 91791, and Lee Walgreens 2013 LLC ("Investor") whose name, phone number and address are listed below. LAMC and Investor acknowledge that the Agreement and this Addendum, along with any other addenda, shall together be referred to as the "Agreement."

> **Lee Walgreens 2013 LLC ("INVESTOR"):**
>
> Name:  Shao Fang Huang _____
>
> Title:  Manager _____
>
> Address: 1906 El Camino Real, Menlo Park, CA 94025 _____

**WITNESSETH:**

**WHEREAS,**

1. LAMC and Investor entered into an Agreement with an effective date of 9th day of September 2013; and
2. LAMC and Investor have agreed to modify the properties contained in Schedule "1" to the Agreement.

**NOW THEREFORE,** the parties hereto hereby agree as follows:

1. **Extension of Closing Date**

   1.1    Closing date to be extended from June 26, 2013 to June 26, 2014.

**IN WITNESS WHEREOF,** each of the undersigned parties to this Agreement has caused this Agreement to be duly executed by one of its duly authorized officers or members, all as of the date first written above.

**LAMC**
Liberty Asset Management Corporation

_____   9/9/2013
Asset Manager          Date

**INVESTOR**
Lee Walgreens 2013 LLC

_____   9/9/2013
Shao Fang Huang, Manager      Date

---

018

# SCHEDULE 1
## REAL ESTATE ASSETS

**REAL PROPERTY**

| Address | City | State | Zip | Acquisition Value |
|---|---|---|---|---|
| 3931 Alemany Blvd | San Francisco | CA | 94132 | $5,900,000.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

019

# Exhibit "D"

 **LIBERTY ASSET MANAGEMENT CORPORATION**

## ADDENDUM TO
## DISCLOSURE ACKNOWLEDGMENT AND COMMITMENT TO PURCHASE
## AND SELL REAL ESTATE ASSETS AGREEMENT

Between

**Liberty Asset Management Corporation**
**("*LAMC*")**

and

**Lee Walgreens 2013 LLC**
**("*Investor*")**

Effective
**September 9, 2014**

 # LIBERTY ASSET MANAGEMENT CORPORATION

### ADDENDUM TO
### DISCLOSURE ACKNOWLEDGEMENT AND COMMITMENT TO PURCHASE AND SELL REAL ESTATE ASSETS AGREEMENT

This Addendum to the Disclosure Acknowledgement and Commitment to Purchase and Sell Real Estate Assets Agreement ("Addendum") is made and entered into as of 9th day of September 2013 ("Effective Date"), is hereby made part of and incorporated into that certain Disclosure Acknowledgement and Commitment to Purchase and Sell Real Estate Assets Agreement dated 23rd day of March 2013 ("Agreement") by and between Liberty Asset Management Corporation and its respective parent or subsidiary companies and affiliates, ("LAMC"), a California Corporation whose principal place of business is located at 3218 E. Holt Avenue, Suite 101, West Covina, CA 9179, and Lee Walgreens 2013 LLC ("Investor") whose name, phone number and address are listed below. LAMC and Investor acknowledge that the Agreement and this Addendum along with any other addenda, shall together be referred to as the "Agreement."

Lee Walgreens 2013 LLC _____ ("INVESTOR"):
Name:   Shao Fang Huang
Title:   Manager
Address: 1906 El Camino Real, Menlo Park, CA 94025

**WITNESSETH:**

**WHEREAS,**

1. LAMC and Investor entered into an Agreement with an effective date of 9th day of September 2013; and
2. LAMC and Investor have agreed to modify the properties contained in Schedule "1" to the Agreement.

**NOW THEREFORE,** the parties hereto hereby agree as follows:

1. **EXTENSION OF CLOSING DATE**

   1.1   **Extension of Closing Date.**   The parties agree to extend the closing date stated in the Agreement from June 26, 2014 to June 26, 2015.

**IN WITNESS WHEREOF,** each of the undersigned parties to this Agreement has caused this Agreement to be duly executed by one of its duly authorized officers or members, all as of the date first written above.

LAMC                                            INVESTOR

Liberty Asset Management Corporation             Lee Walgreens 2013 LLC

_____ 8/11/2014             _____ 8/11/2014
Asset Manager            Date                    Title: Shao Fang Huang, Manager    Date

**SCHEDULE 1**

**REAL ESTATE ASSETS**

REAL PROPERTY

| Address | City | State | Zip | Acquisition Value |
|---|---|---|---|---|
| 3931 Alemany Blvd | San Fransisco | CA | 94132 | 5,900,000.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

# Exhibit "E"

 **LIBERTY ASSET MANAGEMENT CORPORATION**

## CANCELLATION OF DISCLOSURE ACKNOWLEDGMENT AND COMMITMENT TO PURCHASE AND SELL REAL ESTATE ASSETS AGREEMENT AND RELEASE OF DEPOSIT

Between

**Liberty Asset Management Corporation**
("*LAMC*")

and

**Lee Walgreens 2013 LLC**
("*Investor*")

Effective
**March 26, 2015**

025

# LIBERTY ASSET MANAGEMENT CORPORATION

## CANCELLATION OF DISCLOSURE ACKNOWLEDGMENT AND COMMITMENT TO PURCHASE AND SELL REAL ESTATE ASSETS AGREEMENT AND RELEASE OF DEPOSIT

This Cancellation of Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement and Release of Deposit ("Cancellation") is made and entered into as of 26th day of March 2015 ("Effective Date"), by and between Liberty Asset Management Corporation and its respective parent or subsidiary companies and affiliates, ("LAMC"), a California Corporation whose principal place of business is located at 3218 E. Holt Avenue #101, West Covina, CA 91791, and Lee Walgreens 2013 LLC ("Investor") whose name, phone number and address are listed below

| Lee Walgreens 2013 LLC ("INVESTOR"): | |
|---|---|
| Name: | Shao Fang Huang |
| Title: | Manager |
| Address: | 126 Atherton Avenue, Atherton, CA 94027 |

**WITNESSETH:**

**WHEREAS,**

1.  LAMC and Investor entered into the Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement with an effective date of 23rd day of March 2013 ("Agreement");
2.  LAMC and Investor entered into the Addendum to Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement with an effective date of 9th day of September 2013 ("Agreement");
3.  LAMC and Investor acknowledge that the Agreement and any other addenda, amendments and related documents shall together be referred to as the "Agreement");
4.  LAMC and Investor agree that the Agreement on the property(ies) contained in Schedule "1" to the Agreement is cancelled and terminated at the request of Investor.

**NOW THEREFORE,** the parties hereto hereby agree as follows:

1.  **CANCELLATION OF AGREEMENT**

    1.1    **Cancellation of Agreement.** LAMC and Investor agree that the Agreement is hereby cancelled and terminated at the request of Investor.

2.  **RELEASE OF DEPOSIT**

    2.1    LAMC and Investor hereby acknowledge that Investor's deposit in connection with the Agreement shall be fully refunded to Investor on or before May 31, 2015.

    2.2    The Investor's deposit shall be mailed to:

        2.2.2    Lee Walgreens 2013 LLC
                 126 Atherton Avenue
                 Atherton, CA 94027

    2.3    Investor shall return to LAMC the attached Acknowledgment of Receipt of Deposit within 2 (two) business days of receipt of the deposit. Failure to return the Acknowledgement of Receipt of Deposit will void this Cancellation.

3.  **MUTUAL RELEASE**

    3.1    Investor and LAMC mutually release each other from all obligation to buy, sell or exchange the property(ies) contained in Schedule "1" to the Agreement, and from all claims, actions, and demands that each may have against the other(s) by reason of the Agreement.

026

3.2    Investor and LAMC intend that all rights and obligations arising out of the Agreement are null and void upon LAMC's receipt of Investor's Acknowledgement of Receipt of Deposit.

**IN WITNESS WHEREOF,** each of the undersigned parties to this Agreement has caused this Agreement to be duly executed by one of its duly authorized officers or members, all as of the date first written above.

**LAMC**
Liberty Asset Management Corporation

**INVESTOR**
Lee Walgreens 2013 LLC

_____    3/26/2015
Asset Manager                Date

Manager                3/2?/2015
                       Date

---

Proprietary and Confidential          Investor's Initials _____          Page 3 of 4

027

# SCHEDULE 1
## REAL ESTATE ASSETS

**REAL PROPERTY**

| Address | City | State | Zip | Acquisition Value |
|---|---|---|---|---|
| 3931 Alemany Blvd., | San Francisco | CA | 94132 | $5,900,000.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  ***DECLARATION OF SHAO FANG HUANG IN SUPPORT OF THE COMMITTEE'S MOTION FOR SUMMARY ADJUDICATION OF DEFENDANTS' LIABILITY FOR BREACH OF FIDUCIARY DUTIES AND ACCOUNTING*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 3, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- *Alexandre I Cornelius    aicornelius @costell-law.com, ssaad @costell-law.com;mharris @costell-law.com;jstambaugh @costell-law.com;ladelson @costell-law.com;jlcostell @costell-law.com*
- *William Crockett    wec @weclaw.com, ksa @weclaw.com*
- *Gail S Greenwood    ggreenwood @pszjlaw.com, efitzgerald @pszjlaw.com*
- *Jeremy V Richards    jrichards @pszjlaw.com, bdassa @pszjlaw.com;imorris @pszjlaw.com*
- *United States Trustee (LA)    ustpregion16.la.ecf @usdoj.gov*
- *James S Yan    jsyan @msn.com*

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 3, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**PERSONAL DELIVERY**
Honorable Thomas B. Donovan
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1352
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 3, 2016 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**