JEREMY V. RICHARDS (CA SBN 102300)
GAIL S. GREENWOOD (CA SBN 169939)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   jrichards@pszjlaw.com
            ggreenwood@pszjlaw.com

Attorneys for Official Committee of Unsecured Creditors
of Liberty Asset Management Corporation

LAW OFFICES OF STEPHEN R. WADE
STEPHEN R. WADE (CA SBN 79219)
405 N. Indian Hill Blvd.
Claremont, CA 91711
Phone: 909-985-6500
Fax: 909-399-9900

Attorneys for Defendant Lucy Gao

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LIBERTY ASSET MANAGEMENT CORPORATION, a California corporation,<br><br>Debtor and<br>Debtor in Possession. | Case No.:  2:16-bk-13575-ER<br><br>Chapter 11<br><br>Adv. No. 2:16-ap-01337-ER<br><br>**JOINT PRETRIAL STIPULATION DEFENDNT LUCY GAO**<br><br>Pretrial Conference:<br>Date: July 11, 2017<br>Time: 11:00 a.m. |
| OFFICIAL UNSECURED CREDITORS COMMITTEE FOR LIBERTY ASSET MANAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>LUCY GAO, an individual, and BENJAMIN KIRK, an individual,<br><br>Defendants. | Trial<br>Date:   August 2-4, 2017<br>Time:  9:00 a.m.<br>Place: Courtroom 1568<br>          255 E. Temple Street<br>          Los Angeles, CA 90012<br>Judge:  Ernest M. Robles |

The Official Committee of Unsecured Creditors (the "Committee") of Liberty Asset

Management Corporation (the "Debtor" or "Liberty"), in its capacity as plaintiff pursuant to a

stipulation with the Debtor granting standing, and Lucy Gao ("Gao") and Benjamin Kirk ("Kirk")
(collectively the "Defendants"), submit the following Pretrial Stipulation pursuant to Local
Bankruptcy Rule 7016-1(b), and represent as follows:

A.     **The Following Facts Are Admitted and Require No Proof:**

1.      The Committee's **Exhibit 1** is a true and correct copy of the Court's *Order Granting
the Official Committee of Unsecured Creditors' Motion for Summary Adjudication of Defendants'
Liability for Breach of Fiduciary Duties and Accounting* [Docket No. 58] entered January 25, 2017.

2.      The Committee's **Exhibit 2** is a true and correct copy of the Court's *Findings of Fact
and Conclusions of Law Regarding the Offiicial Committee of Unsecured Creditors' Motion for
Summary Adjudication of Defendants' Liability for Breach of Fiduciary Duties and Accounting*
[Docket No. 57] entered January 25, 2017.

3.      The scheduled trial is limited to the issue of alleged damages suffered by the Debtor
as a result of the Defendants' diversion of assets and the Defendants' inability to account for such
assets.

4.      Gao met Kirk in 2000 and they share a child, Joyce Kirk, born April 22, 2004.  They
terminated their personal relationship at least by May 2014.

**The Debtor's Business Model.**

5.      A portion of the Debtor's business was as a real estate investment company that
bought and sold real property using a combination of its own cash, cash from investors, and bank
loans.  Real property acquired by the Debtor was not titled in the name of the Debtor or its investors,
and instead was purchased in the name of various limited liability companies.

6.      At all times since its formation, Kirk was and is the President, CEO, CFO, and sole
shareholder of the Debtor.

7.      Kirk's primary role was soliciting investors for the Debtor, and identifying real
properties for purchase and sale.

8.      Typically, the Debtor entered a contract with an investor (each, an "Investment
Contract") to purchase a specific parcel of real estate, and the investor would wire money to a

designated escrow.  Pursuant to the Investment Contract, the investor was obligated to wire a sum of money and the Debtor was obligated to purchase the designated real property.

9.      The Committee's **Exhibit 3** is a true and correct copy of an Investment Contract entitled, Disclosure Acknowledgment and Commitment to Purchase and Sell Distressed Asset Real Estate Agreement, effective October 31, 2012 between the Debtor and an investor, Union Square Disney Project LLC.

10.      If the Debtor could not complete the purchase of designated real property, the Debtor and investor would cancel the Investment Contract and either agree to refund the investor's deposit, or to maintain those funds on deposit as a credit for future investments by the investor.

11.      The Committee's **Exhibit 4** is a true and correct copy of an agreement entitled, Cancellation of Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement and Release of Deposit ("Cancellation Agreement"), effective as of March 26, 2015 between the Debtor and Union Square Disney Project LLC.

**The Debtor's Operations.**

12.      As Chief Financial Officer, Kirk was responsible for the finances of the Debtor.

13.      Kirk never caused to be prepared or reviewed any quarterly or annual financials of the Debtor. to determine whether the Debtor was making or losing money.

14.      Gao denies that she handled the Debtor's financial matters.  Gao contends that her job was mostly signing checks and applying for loans on behalf of the Debtor at the instruction of Kirk.

15.      In the course of its business, the Debtor formed limited liability companies (referred to herein as "Investment Entities") to acquire and hold assets, including real properties for the benefit of the Debtor and/or its investors.

16.      The membership interest(s) in certain of the Investment Entities were vested in Gao's name.  The stated reason for so doing was in order that Gao could qualify for loans for each such investment based upon her "good credit."

17.      Gao was the sole and/or managing member of the following Investment Entities at various times prior to the bankruptcy:  HK Grace Building LLC, Strong Water Capital Management LLC, Coastline Investments LLC, Diamond Waterfalls LLC, Atherton Financial Building LLC,

3

Pacific View REO Management LLC, FACDC Azusa LLC, 1595 17th Street LLC, and 544 San Antonio Road LLC.

18.    Gao executed certain personal financial statements, under penalty of perjury, in which she represented that certain of the assets of the Investment Entities belonged to her.  Gao contends that she signed these personal financial statements at the instruction of Kirk and for the purpose of allowing her to qualify for loans to acquire real properties.

19.    The Committee's **Exhibit 5** consists of true and correct copies of personal financial statements signed by Gao in 2013, 2014, and 2015.

20.    In the course of its business the Debtor formed certain escrow companies so that the Debtor could handle the closing of certain transactions.  The Debtor's internal escrow companies include the following: American Heritage Escrow Services Corporation, Diamond Point Real Estate Corporation d/b/a Skyline Escrow Services, Gold View Horizon LLC d/b/a Horizon Escrow Services, New Life Real Estate Corporation d/b/a Vista Escrow Services and d/b/a Shoreline Escrow Services.

21.    The Debtor also used the services of a single outside escrow company, Sincere Escrow, an entity owned by Margaret Chiu.

22.    The Committee's **Exhibit 6** consists of true and correct copies of a series of contracts attached to Proof of Claim No. 21-1 filed by Huesing Holdings LLC, which comprise certain short term loans to the Debtor.

**Reckless Investments by the Debtor.**

**(a)  Forfeited Deposits**

23.    In some instances, the Debtor increased its purchase deposit in consideration for an extension of time to close a particular real estate transaction.

24.    The Committee's **Exhibit 7** consists of spreadsheets reflecting a "Total Loss" ("Loss Notes") maintained among the Debtor's books and records.

25.    Kirk has testified that the Loss Notes reflect the amount of deposits lost on each designated transaction.

26.     By the end of 2011, the Debtor forfeited approximately $7 million deposited into escrow in an attempt to purchase 10 United Nations Plaza in San Francisco, which transaction never closed.

27.     In 2013, the Debtor forfeited approximately $2 million deposited in escrow in an attempt to purchase an office building at 540-550 Montgomery Street in San Francisco.

**(b) Hedge Fund Investment**

28.     On or about June 21, 2013, the Debtor, through Strong Water Capital Management LLC, invested $5 million in the purchase of an 11 percent interest in a hedge fund named Foundation Managing Member LLC.

29.     Foundation Managing Member LLC invested in distressed assets, and Kirk and Gao intended for investment in the hedge fund to expand the Debtor's distressed assets business.

30.     Gao instructed the owner of Sincere Escrow to wire $5 million from Escrow No. 013778-MC ($4.5 million to an account of Foundation Managing Member LLC; and $500,000 to an account of Dean and Allison Barr) for investment in Foundation Managing Member LLC.

31.     The Committee's **Exhibit 8** is a true and correct copy of an email from Gao to Margaret Chiu/ Sincere Escrow, including wire instructions, dated June 21, 2013.

32.     Escrow No. 013778-MC was an escrow account established at Sincere Escrow for the purchase of property at 540-550 Montgomery Street in San Francisco.  Sincere Escrow received $12 million from the Debtor's investor, Anson Well International Ltd., which was used to purchase an interest in Foundation Managing Member LLC.

33.     The Committee's **Exhibit 9** is a true and correct copy of Sincere Escrow's receipt and disbursement log dated July 10, 2013 relating to Escrow No. 013778-MC.

34.     Foundation Managing Member LLC subsequently failed.

**Pledge of the Debtor's Properties for the Benefit of Gao.**

35.     On or about October 2, 2012, Gao on behalf of East Heights LLC and Green Oak Asset Management LLC encumbered four real properties located at (a) 1001 East Road, La Habra, CA, (b) 3808 Hollins, Claremont, CA, (c) 409 Avenida Santa Barbara #D, San Clemente, CA, and (d)

5

413 Avenida Santa Barbara #B, San Clemente, CA, by deeds of trust in favor of Shanghai Commercial Bank, securing a loan in the principal amount of $2.88 million.

36.    The Committee's **Exhibit 10** consists of true and correct copies of Deeds of Trust dated October 2, 2012, signed by Gao on behalf of East Heights LLC and Green Oak Asset Management LLC in favor of Shanghai Commercial Bank.

37.    The Committee's **Exhibit 11** is a true and correct copy of the Grant Deed recorded February 28, 2014 transferring property at 413 Avenida Santa Barbara #B, San Clemente, CA, from Gao on behalf of Green Oak Asset Management LLC in favor of a third party, the Clifford and Gerrie Mehling Family Trust.

38.    On or about October 22, 2015, Gao on behalf of Green Oak Asset Management LLC entered a modification agreement with Shanghai Commercial Bank, such that the deed of trust on property at 409 Avenida Santa Barbara #D, San Clemente, CA secures the principal amount of $1.68 million.

39.    The Committee's **Exhibit 12** is a true and correct copy of a Deed of Trust dated October 22, 2015, signed by Gao on behalf of Green Oak Asset Management LLC in favor of Shanghai Commercial Bank.

40.    The loan from Shanghai Commercial Bank remains outstanding and continues to encumber the real properties described in paragraph 35 (a)-(c), above.

**Payments to Gao from the Sale of 166 Geary**

41.    HK Grace Building LLC held title to real property located at 166 Geary Street in San Francisco (the "Geary Property").  Under the terms of an Operating Agreement dated November 2011, Gao was the sole manager and member of HK Grace Building LLC.

42.    Under the terms of an Operating Agreement dated August 2012, the members of HK Grace Building LLC were Sunshine Valley LLC and JD Brother LLC.  Under that Operating Agreement, Vanessa Van Holland was the sole manager of HK Grace Building LLC.

43.    On or about November 17, 2014, HK Grace Building LLC sold the Geary Property for a purchase price of $60 million. Net proceeds of approximately $26 million from the sale of the Geary Property were deposited to an account in the name of HK Grace Building LLC.

6

44.    On November 17, 2014, Gao caused Huntington Giant Capital Corporation to submit an invoice for payment of $1.8 million to HK Grace Building LLC, which was paid from the sale proceeds of the Geary Property to an account in the name of Huntington Giant Capital Corporation. The Committee's **Exhibit 13** consists of true and correct copies of the Seller's Final Closing Statement dated November 17, 2014, and a check payable to Huntington Giant Capital Corporation.

45.    On November 18, 2014, one day after the sale of the Geary Property, Gao paid a check to herself in the amount of $8.5 million. Gao contends, and Kirk disputes, that Kirk instructed the money to be deposited to a joint account.  The Committee's Exhibit 14, below, includes a true and correct copy of a check payable to Gao in the amount of $8.5 million from HK Grace Building LLC.

**Payments to Gao from the Debtor and its Investment Entities.**

46.    The Committee's **Exhibit 14** consists of copies of checks signed and received by Gao.

47.    Between December 2012 and May 2014, Kirk wrote checks payable to Gao from accounts of the Debtor and one of its Investment Entities in the amount of $60,000.  The Committee's **Exhibit 15** consists of true and correct copies of checks signed by Kirk and payable to Gao.

48.    The Committee's **Exhibit 16** consists of copies of checks payable to Gao from accounts of the Debtor and certain Investment Entities.

49.    The Committee's **Exhibit 17** consists of copies of checks payable to Gao from an account of 88 San Fernando LLC.

**Bankruptcies of Investment Entities and Equity Payments.**

50.    Beginning in 2014, Kirk initiated the following bankruptcies on behalf of Investment Entities:

- *In re Diamond Waterfalls LLC* (USBC, Central Dist., Case No. 14-13030) (Judge Neiter)

- *In re Coastline Investments LLC* (USBC, Central Dist., Case No. 14-27223 jointly administered with Case No. 14-13030) (Judge Neiter)

- *In re Atherton Financial Building LLC* (USBC, Central Dist., Case No. 14-27223) (Judge Donovan);

- *In re Gold River Valley, LLC* (USBC, Central Dist., Case No. 15-10691) (Judge Donovan)

- *In re 544 San Antonio Road LLC* (USBC, Central Dist., Case No. 15-13570) (Judge Donovan) (DISMISSED)

- *In re Washe, LLC* (USBC, Central Dist., Case No. 15-13835) (Judge Kaufman) (DISMISSED)

51. The principal assets of Diamond Waterfalls LLC and Coastline Investments LLC consisted of hotels ("Hotels") located in Pomona, California, which were sold in bankruptcy for total consideration of $19.5 million. The Committee's **Exhibit 18** is a true and correct copy of the Seller's Final Settlement Statement dated September 2, 2014 pertaining to sale of the Hotels.

52. On or about May 7, 2015, Kirk, Gao, the disclosed owners of Atherton Financial Building LLC, and Bank SinoPac entered a stipulation (the "SinoPac Stipulation"). The Committee's **Exhibit 19** is a true and correct copy of the SinoPac Stipulation dated May 7, 2015.

53. The Court approved the SinoPac Stipulation and entered an order thereon (the "SinoPac Order"). On June 11, 2015, pursuant to the SinoPac Order, counsel wired $1.5 million to Bank SinoPac.

54. On June 12, 2015, counsel wired the remaining net proceeds for Atherton Financial Building LLC in the amount of $1,623,756.29 to an account in the name of Atherton Financial Building LLC maintained at Cathay Bank.

**Payments to Ho from the Debtor on account of "Profits."**

55. On or about October 17, 2009, Kirk on behalf of the Debtor and Shelby Ho ("Ho") on behalf of Great Vista Real Estate Corporation entered a Profit Sharing Agreement, pursuant to which the Debtor agreed to share profits 50/50 based on the purchase and sale of real properties in exchange for Ho's services introducing investors and otherwise marketing the real properties.

56. The Committee's **Exhibit 20** is a true and correct copy of the Profit Sharing Agreement dated October 17, 2009 between the Debtor and Great Vista Real Estate Corporation.

57. Ho acknowledges receipt of $1,771,900 for profits/commissions between December 2009 and February 2011.

58.    In and after February 2011, Ho received wire payments from Liberty or its internal escrow companies in the aggregate amount of $3.1 million.  Ho contends that these amounts were not profits/commissions and, instead, constituted repayments of loans extended by Ho or her friends for the benefit of the Debtor.

59.    The Committee's **Exhibit 21** consists of a spreadsheet maintained among the Debtor's books and records identifying purported commissions to Ho, and wire transfer receipts for transfers to Ho from February 2011 through December 2012.

60.    After February 2011, Ho contends that the Debtor did not have sufficient cash to pay her profits/commissions so Ho agreed to accept real property interests as payment for her profits/commissions.

61.    In or about July 2012, Ho received membership in the Investment Entity (SJ 10177 LLC) that held title to 126 Atherton Avenue in Atherton.  In or about July 2015, Ho received membership in the Investment Entity (NC Project Management LLC) that held title to two condominiums at 88 E. San Fernando in San Jose.

**B.    The Following Issues of Fact, and No Others, Remain to Be Litigated:**

1.    The amount of damages caused by Kirk arising from his breach of fiduciary duties to the Debtor and failure to account for assets of the Debtor.

2.    The amount of damages caused by Gao arising from her diversion of assets of the Debtor and failure to account for assets of the Debtor.

3.    Additional disputed issues of fact pertaining to damages caused by Kirk and/or Gao include the following:

    a.    As of March 2015, when the Debtor entered a Cancellation Agreement with Union Square Disney Project LLC, did the Debtor have $6 million cash available to return to the investor?

    b.    Did Kirk ever make a determination based on the Debtor's financials whether the Debtor was making or losing money?

    c.    Whether Kirk delegated responsibility for all financial matters of the Debtor to Gao.

9

d.     Whether Gao was vested with the membership interest(s) in certain of the Investment Entities for the stated reason of posting personal guarantees.

e.     Whether Margaret Chiu of Sincere Escrow followed the directions of the Debtor's agents by disbursing funds from investor escrows.

f.     Although Investment Contracts identified specific assets that investor funds were to be used to purchase, were investor funds always, or almost always, swept by Liberty from the internal and external escrows and used for purposes other than those stipulated in the Investment Contract.

g.     Whether, for example, Faith Hope International, Ltd. invested $12 million to purchase real property located at 540-550 Montgomery, and Smart Gear Development Ltd. invested $6 million to purchase real property located at 39 Stockton, a sum that remains outstanding for transactions that did not close.  And whether Remy Associates invested approximately $8.5 million to purchase real properties, including at 175 Stone Pine Lane and 650-52 Lake Avenue, an amount that remains outstanding for transactions that closed in favor of other entities.

h.     Whether Kirk believes that the profit margin available from buying and selling properties disappeared around 2012.

i.     Whether beginning in October 2013, the Debtor borrowed money from an investor, Huesing Holdings LLC ("Huesing"), to maintain its cash flow.  The borrowing totaled approximately $6 million in short term loans between about September of 2013 and October of 2014, which loans were repeatedly extended and never repaid.  The loans from Huesing purported to accrue interest at an annual rate of 15% per annum, and by October of 2014, Liberty purportedly owed Huesing approximately $10.7 million.

j.     Whether Kirk had any plan regarding how the loans from Huesing would be repaid.

k.     Whether funds paid to the Debtor by its investors were dissipated by, or at the direction of, Kirk and Gao.  Neither the Debtor, Kirk nor Gao have accounted for, or can account for, the loss of these funds.

10

l.      Whether the Debtor entered into numerous transactions for the purchase of real estate without the ability to close the transactions, which resulted in the repeated forfeiture of substantial non refundable deposits.  In each instance, the Debtor committed to purchase property with a combination of cash and loans, with no reasonable expectation that it would be able to obtain the necessary balance of funds by selling another property or receiving additional funds from investors.  The Debtor lost deposits when it was unable to fund the balance of the purchase price.

m.      Whether between 2011 and 2013, Liberty lost approximately $21 million based on forfeited deposits.

n.      Whether by early 2014, the Debtor lost approximately $6 million of a non-refundable deposit paid in an attempt to purchase property at 600 Wilshire in downtown Los Angeles.

o.      Whether Kirk performed any due diligence with respect to the Debtor's investment in Foundation Managing Member LLC.

p.      Whether Kirk could be certain, not having seen any financials, that the Debtor had sufficient cash of its own to invest above amounts that were already due to creditors.

q.      Whether proceeds of the $2.88 million loan from Shanghai Commercial Bank were utilized by Gao for the benefit of the Debtor.

r.      Whether the loan from Shanghai Commercial Bank was made to Gao, individually.

s.      Whether an account in the name of Huntington Giant Capital Corporation maintained at Mega Bank was controlled by Gao.

t.      Whether funds deposited to the account of Huntington Giant Capital Corporation from the sale of the Geary Property were utilized for the benefit of the Debtor.

u.      Whether funds in the amount of $8.5 million paid from HK Grace Building LLC to Gao were utilized by Gao for the benefit of the Debtor.

v.      Whether between February 2012 and December 2014, Gao wrote checks payable to herself from accounts of the Debtor and its Investment Entities in the amount of $14,564,972.

11

w.      Whether between July 2012 and June 3, 2014, Gao wrote additional checks to herself from accounts of the Debtor and its Investment Entities in the amount of $3,352,874.

x.      Whether between September 2012 and November 2012, Gao received additional checks from an account purporting to belong to 88 San Fernando LLC in the amount of $2,206,000.

y.      Whether all funds paid to, or received by, Gao were used for the benefit of the Debtor and/or its Investment Entities.

z.      Whether on September 30 and October 16, 2014, counsel wired net proceeds from the Hotels to Gao in the amounts of $2.6 million and $150,000, for a total of $2.75 million returned to Gao as equity from Diamond Waterfalls LLC and Coastline Investments LLC.

aa.      Whether the principal asset of Atherton Financial Building LLC was a commercial building located in Menlo Park, California.  The Statement of Financial Affairs for Atherton Financial Building LLC asserts ownership as follows: 20% owned by American REO Solutions LLC, 40% owned by Great Vista Real Estate Investment Corp., 20% owned by Washington Capital Management LLC, and 20% owned by Sunshine Valley LLC whose managing member was Kirk.

bb.      Whether during the course of the Atherton Financial Building LLC bankruptcy, the Court authorized the sale of the commercial building for $14.3 million and required that net proceeds of the sale (after making certain authorized payments) be held by the debtor's counsel.

cc.      Whether payment of $1.5 million to Bank SinoPac pursuant to the SinoPac Stipulation was on account of a state court judgment against Gao.

dd.      Whether an account in the name of Atherton Financial Building LLC maintained at Cathay Bank was controlled by Gao.

**C.      The Following Issues of Law, and Not Others, Remain to Be Litigated:**

1.      Whether the appropriate calculation of damages for the Defendants' breach of fiduciary duties consists of direct losses suffered by the Debtor, including unrecoverable losses from

1   reckless investments, pledges of property for the benefit of Gao, and direct payments to Gao and

2   others.

3        2.    Whether the appropriate calculation of damages for the Defendants' failure to account

4   consists of the allowed claims against the Debtor, limited to principal amounts advanced to Debtor,

5   less the creditors' net recovery.

6   **D.**    **Attached Is a List of Exhibits Intended to Be Offered at the Trial By
7   Each of the Parties, Other Than Exhibits to Be Used For Impeachment
Only.  The Parties Have Exchanged Copies of All Exhibits.**

8   See attached lists.

9   **E.**    **The Parties Have Exchanged a List of Witnesses to Be Called at Trial.**

10  See attached lists.

11  **F.**    **Other Matters That Might Affect Trial.**

12  **G.**    **All Discovery Is Complete.**

13  **H.**    **The Parties Are Ready for Trial.**

14  **I.**    **The Estimated Length of Trial Is Three Days.**

15  **J.**    **The Foregoing Admissions Have Been Made by the Parties, and the
16  Parties Have Specified the Foregoing Issues of Fact and Law Remaining
to Be Litigated.  Therefore, This Order Supersedes the Pleadings and
17  Governs the Course of Trial of This Cause, Unless Modified to Prevent
Manifest Injustice.**

18

19

20

21

22

23

24

25

26

27

28

1  Dated:  June 27, 2017                    PACHULSKI STANG ZIEHL & JONES LLP

2

3                                           By: _____
                                                   Jeremy V. Richards
4                                                  Gail S. Greenwood

5                                           Attorneys for Official Committee of Unsecured
                                            Creditors of Liberty Asset Management
6                                           Corporation

7

8  Dated:  July 5, 2017                     LAW OFFICES OF STEPHEN R. WADE, P.C.

9

10                                          By: _____/s/ Stephen R. Wade_____
                                                   Stephen R. Wade

11                                          Attorney for Lucy Gao

12

13  Dated:  June __, 2017

14

15                                          By: _____
                                                   Benjamin Kirk
16
                                            *In Propria Persona*
17

18

19

20

21

22

23

24

25

26

27

28

DOCS_SF:94316.2 52593/002

## THE COMMITTEE'S EXHIBIT LIST

| Exhibit Number | Description | Objection |
|---|---|---|
| 1 | *Order Granting the Official Committee of Unsecured Creditors for Summary Adjudication of Defendants' Liability for Breach of Fiduciary Duties and Accounting* entered by the Court on January 25, 2017 (Adv. No. 16-ap-01337, Docket No. 58) | **NONE** |
| 2 | *Findings of Fact and Conclusions of Law Regarding Motion by the Official Committee of Unsecured Creditors for Summary Adjudication of Defendants' Liability for Breach of Fiduciary Duties and Accounting* entered by the Court on January 25, 2017 (Adv. No. 16-ap-01337, Docket No. 57) | **NONE** |
| 3 | Disclosure Acknowledgment and Commitment to Purchase and Sell Distressed Asset Real Estate Assets Agreement dated October 31, 2012 [Exh. 19 to Kirk Deposition. | **1, 2,3** |
| 4 | Cancellation and Disclosure Acknowledgment and Commitment to Purchase and Sell Real Estate Assets Agreement and Release of Deposit dated March 26, 2015 [Exh. 21 to Kirk Deposition] | **1, 2, 3** |
| 5 | Personal financial statements signed by Gao dated November 30, 2013, April 1, 2014, and October 20, 2015 [Exhs. 18-20 to the Gao Deposition] | **NONE** |
| 6 | Non-specific Asset Management Contracts between the Debtor and Huesing Holdings LLC dated October 31, 2013 through October 27, 2014 [Exh. 24 to the Kirk Deposition] | **1, 2, 3** |

DOCS_SF:94316.2 52593/002

| 7 | Spreadsheets maintained among the Debtor's books and records, Bates Nos. LAM00036057-059 [Exh. 17 to Kirk Deposition] | **1, 2** |
|---|---|---|
| 8 | Email and wire instructions from Gao dated 6/21/13 [Exh. 28 to the Gao Deposition] | **NONE** |
| 9 | Sincere Escrow Receipt and Disbursement Log dated July 10, 2013 [Exh. 23 to Kirk Deposition] | **1, 2, 3** |
| 10 | Deeds of Trust by East Heights LLC and Green Oak Asset Management LLC in favor of Shanghai Commercial Bank ($2.88M) dated 10/2/12 | **NONE** |
| 11 | Grant Deed by Green Oak Asset Management LLC to the Mehling Family Trust recorded 2/28/14 | **NONE** |
| 12 | Deed of Trust by Green Oak Asset Management in favor of Shanghai Commercial Bank ($1.68M) dated 10/22/15. | **NONE** |
| 13 | Seller's Final Closing Statement dated November 18, 2014 [Exh. E to the Complaint] | **NONE** |
| 14 | Checks payable to Gao from the Debtor and Investment Entities [Exh. 15 to Gao Deposition] | **1, 2** |
| 15 | Checks payable Gao from the Debtor and Investment Entities, signed by Kirk [Exh. 16 to Gao Deposition] | **1, 2** |
| 16 | Additional checks payable to Gao from the Debtor and Investment Entities | **1, 2** |
| 17 | Checks payable to Gao from 88 San Fernando LLC | **1, 2** |

16

| 18 | Seller's Final Settlement Statement dated September 2, 2014 [Exh. L to the Complaint] | 1, 2 |
|---|---|---|
| 19 | SinoPac Stipulation dated May 7, 2015 [Exh. S to the Complaint] | 1, 2 |
| 20 | Profit Sharing Agreement between the Debtor and Great Vista Real Estate Corp. dated October 17, 2009 [Exh. 39 to Kirk Deposition] | 1, 2 |
| 21 | Spreadsheet maintained among the Debtor's books and records, Bates Nos. LAM00042386-87 [Exh. 40 to Kirk Deposition] together with wire confirmations | 1, 2 |
| 22 | Mega Bank signature cards for the checking account of Huntington Giant Capital Corporation | 1, 2 |

Objections Note:  The above objections are by Defendant Lucy Gao and are numbered and defined as follows: 1) is an objection based on lack of foundation, 2) is an objection based on hearsay, and 3) is an objection based on irrelevance.

## THE DEFENDANTS' EXHIBIT LIST

| Exhibit Letter | Description | Objection |
|---|---|---|
| A | Cancelled checks written by Lucy Gao (6) | |
| B | Cancelled check written by Lucy Gao to JSK 23 LLC | |
| C | Cancelled checks written by Lucy Gao (4) | |
| D | Cancelled checks written by Lucy Gao (3) | |
| E | Statement from Mega Bank 4/30/14 with cancelled checks | |
| F | Cancelled checks written by Lucy Gao (3) | |
| G | Cancelled checks written by Lucy Gao (4) | |
| H | East West Bank statement 4/1/15 with cancelled checks | |
| I | Mega Bank account reconciliation | |
| J | MegaBank Statement 9/28/12 with cancelled checks | |
| K | Mega Bank Statement 10/31/12 with cancelled checks | |
| L | Mega Bank Statement 11/28/14 with cancelled checks | |
| M | Receipt for Deposit | |
| N | Promissory Note with cashier's checks | |
| O | Cathay Bank Statement 1/6/15 with cancelled checks | |
| P | Cancelled checks, wire transfers and related documents | |

18

### THE COMMITTEE'S WITNESS LIST

1.      Lucy Gao

2.      Benjamin Kirk

3.      David Golubchik, Esq.

DOCS_SF:94316.2 52593/002

# THE DEFENDANT GAO'S WITNESS LIST

1.    LUCY GAO

2.    BENJAMIN KIRK

3.    VANESSA VAN HOLLAND

4.    SHELBY HO

5.    MARGARET CHIU

DOCS_SF:94316.2 52593/002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
405 N. Indian Hill Blvd., Claremont, CA 91711

A true and correct copy of the foregoing document entitled (*specify*): **JOINT PRETRIAL STIPULATION DEFENDNT LUCY GAO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 7/5/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

William Crockett    wec@weclaw.com, ksa@weclaw.com
Gail S Greenwood    ggreenwood@pszjlaw.com, rrosales@pszjlaw.com
Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
Timothy J Silverman    tsilverman@scheerlawgroup.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Stephen R Wade    srw@srwadelaw.com, reception@srwadelaw.com
James S Yan    jsyan@msn.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 7/5/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

U.S. Bankruptcy Court
Hon. Ernest M. Robles
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/5/2017 | Alicia Cosio | /s/ Alicia Cosio |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**