JEREMY V. RICHARDS (CA SBN 102300)
GAIL S. GREENWOOD (CA SBN 169939)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   jrichards@pszjlaw.com
              ggreenwood@pszjlaw.com

Attorneys for Official Committee of Unsecured Creditors
of Liberty Asset Management Corporation

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LIBERTY ASSET MANAGEMENT CORPORATION, a California corporation,<br><br>Debtor and<br>Debtor in Possession. | Case No.:  2:16-bk-13575-ER<br><br>Chapter 11<br><br>Adv. No. 2:16-ap-01337-ER |
| OFFICIAL UNSECURED CREDITORS COMMITTEE FOR LIBERTY ASSET MANAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>LUCY GAO, an individual, and BENJAMIN KIRK, an individual,<br><br>Defendants. | **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION IN LIMINE TO EXCLUDE EVIDENCE**<br><br>Trial<br>Date:    August 2-4, 2017<br>Time:   9:00 a.m.<br>Place:  Courtroom 1568<br>            255 E. Temple Street<br>            Los Angeles, CA 90012<br>Judge:  Ernest M. Robles |

## I.

## INTRODUCTION

Lucy Gao ("Gao") has identified Exhibits A through P that she intends to offer into evidence at trial.  The documents consist of a piecemeal selection of personal bank statements, checks, wire transfers, a prepared summary of transactions, and a promissory note, much of which has not been previously produced.  The Committee assumes that Gao will belatedly seek to use these documents

and testimony in an attempt to offer, at best, a partial accounting for the Debtor's funds.  The

Committee objects to the evidence and requests that all of it be excluded for the following reasons:

1.  The Court has already determined that the Debtor's records (which Gao was charged with
    maintaining) "are incomplete and insufficient to permit a proper accounting of funds
    received and disbursed over the last four years," and that "Gao and Kirk can neither
    account for the Debtor's funds that were controlled by them, nor have they demonstrated
    that any such accounting is possible;" thus, any attempt by Gao to account at this time is
    barred by the law of the case.

2.  Even if Gao were to be given yet another opportunity to account for the Debtor's funds,
    the proposed evidence does not even purport to do so; Gao offers a selective sample of
    her own financial information over a limited period of time in an effort to explain the
    dissipation of tens of millions of dollars of the Debtor's funds controlled by her. To say
    that her effort is too little, too late would be an understatement.

3.  At least some of the Exhibits (specifically Exhibits L and P) appear to be part of an
    attempt to explain what happened to $8.5 million that Gao admits depositing to her own
    account from the sale of the Geary Property; Gao asserted the Fifth Amendment when
    asked under oath about the disposition of these funds in a hearing held in the case on June
    22, 2016, and the Court has previously held in this adversary proceeding that Gao is
    precluded from testifying on this subject matter.

4.  Many of the documents that Gao seeks to rely on have never been produced (in
    particular, documents that relate to her joint account with Kirk held at Mega Bank, and
    her sole accounts held at East West Bank and Cathay Bank), and serve no probative value
    in attempting to reconstruct the Debtor's accounts.

## II.

## FACTUAL BACKGROUND

The Court has already determined that Gao failed to account for the Debtor's assets and

breached her fiduciary duties to the Debtor.  *See Findings of Fact and Conclusions of Law* entered

January 25, 2017 [Docket No. 57], and *Order Granting the Official Committee of Unsecured*

2

*Creditors' Motion for Summary Adjudication of Defendants' Liability for Breach of Fiduciary Duties and Accounting* entered January 25, 2017 [Docket No. 58].  Specifically, this Court has already found that:

1.  "Gao was in charge of: overseeing the Debtor's accounting function; ensuring that timely tax returns were prepared; maintaining records pertaining to the purchase and sale of assets; records pertaining to the financing of assets; records pertaining to the flow of funds from investors; and maintaining QuickBooks records."  Findings of Fact, ¶ 7.

2.  The Debtor's records "are incomplete and insufficient to permit a proper accounting for funds received and disbursed over the last four years."  Findings of Fact, ¶ 25.

3.  "As a fiduciary of the Debtor, Gao bears the burden of accounting for funds entrusted to the Debtor.  [Citation omitted]" and "Kirk and Gao each bear the burden of proof to account to the Debtor."  Conclusions of Law, ¶¶ 7, 14; and

4.  "Gao and Kirk can neither account for the Debtor's funds that were controlled by them, nor have they demonstrated that any such accounting is possible."  Conclusion of Law, ¶ 15.

The only issue remaining for trial is a determination of the damages suffered by Liberty from the Defendants' breaches of fiduciary duty by diverting assets of Liberty and in failing to account.

Gao offers a selective set of documents pertaining to her personal and joint bank accounts with Kirk.  For example, Exhibit A is set of six checks from Gao's personal account dated between September 12 and September 24, 2012.  Exhibit J is the same set of checks, together with a monthly statement for the period.  The glaring question from the statement (Exhibit J) is not why Gao wrote the six checks but from where she received over $2 million during the month of September, 2012, all of which appears to have been transferred for undisclosed purposes during the same month.  The exhibits merely reinforce what the Court already knows – that the Defendants did not follow any corporate formalities, the Debtor's money regularly flowed to Gao personally, and there is no ability to account.  Simply stated, Gao's proposed exhibits and any related testimony are not an accounting and are not relevant to the Debtor's damages.  The fact that Gao personally received money from the Debtor and, by her testimony, subsequently paid certain expenses attributable to the Debtor, is not an

accounting.  Gao's personal bank statement from a single month does not account for the flow of money in previous or subsequent months or even that same month.  The limited set of documents that Gao seeks to offer are too little, too late, and dispositive of nothing.

### A.    The Court Should Exclude Gao's Proposed Exhibits and Related Testimony As Irrelevant Because the Court Has Already Determined That Gao Is Liable for Failure to Account.

The Court should exclude Gao's proposed exhibits and any related testimony that purports to account for the Debtor's money because they are irrelevant to the issue at trial: damages caused by the Defendants' breach of fiduciary duties and failure to account.  Fed. R. Evid. 401.  The Court has already determined liability.  It is too late to present an accounting.  Moreover, whether Gao paid certain checks for the benefit of the Debtor, or not, does not alter the Debtor's damages resulting from the Defendants' inability to account for the disposition of funds now that the Debtor is in bankruptcy.

Gao previously offered piecemeal checks and testimony to explain her receipt of the Geary sale proceeds in response to the Committee's summary adjudication motion.  *See* Gao Declaration in Opposition to Summary Adjudication [Docket No. 34], ¶13 and Exhibits 1-16 (money allegedly transferred to personal account to "ensure mortgages were paid").  The evidence was insufficient to account for the Geary proceeds, and it was subject to exclusion because Gao previously asserted her Fifth Amendment right to refuse to testify on the subject.  Findings of Fact, ¶¶ 23, 26-27; Conclusions of Law, ¶16.  The Court should not allow Gao to re-introduce various checks, including those relating to her handling of the Geary sale proceeds, because the Court correctly determined that the piecemeal checks were insufficient to constitute an accounting.

The measure of damages based on a fiduciary's failure to account is the money that was entrusted to the fiduciary that cannot be accounted for.  *See, e.g., Kim v. Fujikawa,* 871 F. 2d 1427, 1431 (9th Cir. 1989) (breach of fiduciary duty requires restoration of funds from prohibited transaction, with all doubts resolved in favor of the plaintiff); *Hughes Tool Co. v. Meier,* 489 F. Supp. 354, 376 (D. Utah 1978) (fiduciary liable for the entire amount of money that went through him or was his responsibility; rejecting lesser amount of funds knowingly diverted by the fiduciary).  All presumptions are against the fiduciary.  *Id.*  A fiduciary who commingles trust funds and fails to

4

1   maintain records, and thereafter offers general estimates of transactions at issue, does not meet the

2   burden of "strict accountability." *See Estate of McCabe,* 98 Cal. App. 2d 503, 509 (1950).  In

3   *McCabe,* a mother received money for herself following the death of her husband and a lesser sum

4   of money in trust for their daughter.  Years later, the daughter sought an accounting and the mother

5   offered estimates of general living expenses made on her daughter's behalf under the discretionary

6   provisions of the trust.  *Id.* at 506-07.  On appeal, the court rejected the purported accounting and

7   concluded that the mother was liable for the entire trust amount based on the commingling and

8   failure to account.  *Id.* at 508 ("Mrs. McCabe violated her duties as trustee, statutory and otherwise,

9   by mingling these funds with her own, by omitting to invest them so as to provide an income, and by

10  negligently failing to keep any records which would enable her to render a true account… All of

11  these matters have a bearing on whether such charges are established by 'satisfactory evidence,' in

12  the absence of any vouchers or records of any kind, and when all presumptions are against the

13  trustee.").

14          The Court has already ruled that Kirk and Gao each bear the burden of proof to account to

15  the Debtor, and "must demonstrate that all monies entrusted to the Debtor through them were

16  properly managed by rendering an account of all receipts and disbursements, showing when, to

17  whom, and for what purpose payments were made." Conclusion of Law, ¶ 14.  Gao is unable to

18  account.  Conclusion of Law, ¶ 15.  Gao's assorted checks and bank statements are not an

19  accounting, and do not alter her failure to account.  Assuming Gao had authority to move the

20  Debtor's money from escrow and other accounts, she did not have authority, contractual or

21  otherwise, to deposit money to a personal account for spending according to her whim.  All available

22  evidence supports Gao's liability for failure to account for the Debtor's funds.

     **B.**    **The Court Should Exclude Gao's Proposed Exhibits
and Related Testimony Because a Partial Accounting
Is Meaningless and Does Not Satisfy Her Burden of Proof.**

25          Even if this Court's prior ruling regarding liability does not bar Gao's attempt at this time to

26  account for the Debtor's funds, her belated identification of selected personal records from a limited

27  period of time, purporting to document transactions selected by her, does not constitute an

28  accounting and does not satisfy her burden of proof.  Gao was required to render an account of all

5

1  receipts and disbursements of the Debtor, showing when, to whom, and for what purpose payments

2  were made.  Conclusion of Law, ¶ 14.  "The accounts should be clear and accurate and if they are

3  not, all presumptions are against the trustee and all obscurities and doubts are to be taken adversely."

4  *In re Niles,* 106 F. 3d 1456, 1461 fn. 4 (9th Cir. 1997) (citation omitted).

5      Courts agree that a fiduciary must demonstrate "every item of an account by satisfactory

6  evidence."  *Blackmon v. Hale,* 1 Cal. 3d 548, 560 (1970).  *See also In re Niles,* 106 F. 3d 1456, 1461

7  fn. 4   (9th Cir. 1997)(fiduciary must render an account that "show[s] in detail the items expended

8  and show when, to whom, and for what purposes the payments were made;" citations omitted);

9  *Bynum v. Baggett,* 228 F. 2d 566, 573 (5th Cir. 1956) ("To account is to do just that.  The one

10  obliged to account does not fulfill has duty by supplying only that which the beneficiary requests,

11  that which is conveniently accessible, or remaining silent in the face of the beneficiary's inevitable

12  difficulty in trying to construct or reconstruct accounts which out to have been kept and available.").

13      Gao apparently intends to offer a partial accounting for the Debtor's funds based on a

14  selective set of monthly statements for her personal account and selective copies of checks or wire

15  statements.  As described in *Bynum v. Baggett, supra,* it is not an accounting to supply "that which is

16  conveniently accessible" in response to the limited set of transactions that the Committee has

17  identified.  Moreover, Gao's proposed exhibits raise more questions than they resolve.  The fact that

18  Gao paid the IRS from her personal account, after receiving funds to the account in a different

19  amount (and for no apparent reason), should not reduce the Court's calculation of damages based on

20  her breach of fiduciary duties and failure to account.  Why did she receive money from the Debtor

21  and pay alleged expenses from her personal account, the same account from which she paid her

22  daughter's school tuition?  Why did she receive $2.03 million to her personal account, yet she offers

23  checks and a summary of only $1.03 million of alleged expenses?  *Cf.* Proposed Exhibits I and J.

24  The Court has already held that: Gao was in charge of maintaining appropriate books and records

25  and that the books and records turned over to the Chief Restructuring Officer "are incomplete and

26  insufficient to permit a proper accounting for funds received and disbursed over the last four years."

27  Even if the Court had not already held that Gao has failed to properly account for the Debtor's funds,

28

6

the piecemeal snapshots offered from a selection of her own personal records does not satisfy her

obligation to provide a clear and accurate accounting for the Debtor's funds.

### C.    The Court Should Exclude Gao's Proposed Exhibits and Related Testimony Because Their Presentation Will Unduly Waste the Court's Time and Cause Prejudice to the Committee.

Even if Gao's proposed exhibits and testimony are what they purport to be, they should be

excluded because their probative value is substantially outweighed by the risk of wasting the Court's

time and causing delay, as well as prejudice to the Committee.  Fed. R. Evid. 403.

The Committee assumes that Gao will seek to demonstrate that money diverted to her

personal accounts was, in certain instances, used to pay the Debtor's expenses or returned to the

Debtor or its Investment Entities.  The numerous exhibits and potentially related testimony are only

a sliver of the picture of what happened to the Debtor's assets, and they do not address what

happened immediately before or after, and sometimes simultaneously with, the transactions reflected

in the proposed exhibits.  The proposed exhibits are not probative of an accounting based on

"satisfactory evidence" – i.e., evidence that supports the accuracy of every item of account (*Estate of*

*McCabe*, 98 Cal. App. 2d at 505), and should be excluded because introduction of such evidence

will cause extraordinary delay and waste the Court's time.  The Court has already determined that

Gao is unable to account to the Debtor, and Gao's various proposed exhibits do not mitigate the

damages resulting from her fundamental inability to account.

Consideration of Gao's proposed exhibits and related testimony is also extremely prejudicial

to the Committee.  Pursuant to Federal Rule of Bankruptcy Procedure 7037(c), "If a party fails to

disclose or supplement information required by Rule 26(a) or (e), the party is not allowed to use that

information …at a hearing or at trial unless the failure was substantially justified or is harmless."

Gao has had multiple opportunities to account for the Debtor's assets, or at a minimum, explain why

she paid herself millions of dollars from the Debtor and its Investment Entities.  The Complaint

outlines Gao's conversion of assets, including the Geary sale proceeds, yet she failed to produce any

documents in connection with initial disclosures.  She offered only a handful of alleged expense

checks in response to summary adjudication of her liability; she disclaimed any knowledge of why

she received checks from the Debtor and its Investment Entities during her deposition in April 2017;

7

1   she agreed that she would review and produce personal bank statements within a matter of weeks of

2   her deposition; yet she failed to produce anything until presenting the Committee with proposed trial

3   exhibits.  Greenwood Declaration, ¶¶ 2-6.  There is no excuse for Gao's belated proffer of evidence

4   beyond the fact that it is a last-ditch effort to raise a defense.

5         Further, Exhibits L and P appear to relate to the proceeds from the sale of the Geary

6   Property, which Gao has admitted, and which the Court has already found were misappropriated.

7   Finding of Fact, ¶ 23.  The Court has also found that Gao asserted her Fifth Amendment rights with

8   respect to questions asked of her under oath relating to the disposition of the Geary sale proceeds

9   (Conclusion of Fact, ¶ 26) and that, as a consequence, Gao is now precluded from testifying on this

10  subject because of the prior successful assertion of the privilege.  Conclusion of Law, ¶ 16.  The

11  attempted introduction of exhibits L and P is a blatant end-run around these prior rulings.

12        Gao's assortment of personal checks and bank statements, and related testimony that she may

13  offer, is not dispositive of her failure to account, and even if presented prior to the Court's

14  determination of liability, would not have sufficed as a comprehensive accounting of funds received

15  and paid.  The proposed exhibits and testimony should be excluded because they will waste time and

16  prejudice the Committee.

### III.

### CONCLUSION

19        The lack of adequate accounting, financial and banking records, and tax returns has been an

20  issue in this case since the day it was filed.  One of the first issues taken up by the Court was the

21  failure of Gao, as custodian, to turn over adequate records to the Debtor's Chief Restructuring

22  Officer and evidence that, post-petition, records had been deliberately destroyed by Gao and those

23  acting at her direction.  *See* Request for Judicial Notice [Dkt. 20], Exhibit R.  Notwithstanding an

24  adequate opportunity to establish otherwise, the Court has already concluded that Gao cannot

25  account for the Debtor's assets that passed through her custody and control.  That ship has now

26  sailed and it is too late for Gao to attempt a full and complete accounting.

27        Even if that was not the case, the records that Gao attempts to introduce are neither the

28  Debtor's records nor do they even attempt to establish a complete and accurate accounting for the

8

Debtor's assets and liabilities.  Rather, they appear to be a selective and limited view of various transactions involving bank accounts that Gao held in her own name, or jointly with Kirk.  Many of these documents had not previously been seen by the Committee until they were identified in Gao's belated Joint Pretrial Stipulation.

For all of the reasons set forth herein, Exhibits A through P proffered by Gao and any related testimony should be excluded from evidence at trial.

Dated:  July 24, 2017                    PACHULSKI STANG ZIEHL & JONES LLP


By: _____ */s/ Jeremy V. Richards* _____
                                         Jeremy V. Richards
                                         Gail S. Greenwood

                                         Attorneys for Official Committee of Unsecured
                                         Creditors of Liberty Asset Management
                                         Corporation

9

1  JEREMY V. RICHARDS (CA SBN 102300)
   GAIL S. GREENWOOD (CA SBN 169939)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA  90067
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760
   E-mail:  jrichards@pszjlaw.com
5           ggreenwood@pszjlaw.com

6  Attorneys for Official Committee of Unsecured Creditors
   of Liberty Asset Management Corporation

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                      **LOS ANGELES DIVISION**

11  In re:                                    Case No.:  2:16-bk-13575-ER

12  LIBERTY ASSET MANAGEMENT                  Chapter 11
    CORPORATION, a California corporation,
13
                                              Adv. No. 2:16-ap-01337-ER
            Debtor and
14          Debtor in Possession.
                                              **DECLARATION OF GAIL**
15  _____   **GREENWOOD IN SUPPORT OF THE**
                                              **OFFICIAL COMMITTEE OF**
16  OFFICIAL UNSECURED CREDITORS              **UNSECURED CREDITORS' MOTION IN**
    COMMITTEE FOR LIBERTY ASSET               **LIMINE TO EXCLUDE EVIDENCE**
    MANAGEMENT CORPORATION,
17
                                              <u>Trial</u>
18          Plaintiff,                        Date:   August 2-4, 2017
                                              Time:   9:00 a.m.
19      vs.                                   Place:  Courtroom 1568
                                                      255 E. Temple Street
20  LUCY GAO, an individual, and BENJAMIN             Los Angeles, CA 90012
    KIRK, an individual,                      Judge:  Ernest M. Robles
21
            Defendants.
22  _____

23          I, Gail S. Greenwood, declare as follows:

24          1.      I am an attorney at law duly licensed to practice in the state and federal courts in the

25  State of California, and admitted to practice before this Court.  I am an attorney with the law firm of

26  Pachulski Stang Ziehl & Jones LLP, counsel to the Official Committee of Unsecured Creditors (the

27  "<u>Committee</u>") of the above-captioned debtor.  I submit this declaration in support of the

28  accompanying *Motion in Limine to Exclude Evidence* proffered by defendant Lucy Gao ("<u>Gao</u>").

                                            1

1   2.    On October 21, 2016, the parties exchanged initial disclosures.  In terms of document

2   categories, Gao generally identified "all bank statements pertaining to Property and Transactions

3   alleged in the Complaint."  Gao did not produce or specifically identify any personal banking records.

4   3.    On December 5, 2016, Gao responded to the Committee's *Motion for Summary*

5   *Adjudication of Defendants' Liability for Breach of Fiduciary Duties and Accounting* and submitted

6   a declaration [Docket No. 34] attaching certain canceled checks paid from a personal account at East

7   West Bank.  The bank account number was redacted.

8   4.    On April 19, 2017, Gao appeared and testified at a deposition in this case and I

9   questioned her regarding multiple checks that were signed by Gao on behalf of the Debtor or

10   Investment Entities as payor, and received by Gao as the payee.  She did not know why she received

11   and deposited the checks to her personal account, but repeatedly stated that she needed to look at her

12   bank statements.  At the conclusion of questioning regarding checks for which she had no

13   information, Gao agreed, and her attorney confirmed, that she would produce within two weeks of

14   the deposition (i.e., on or about May 3rd) bank statements for a joint account at Mega Bank and a

15   personal account at East West Bank.  True and correct copies of excerpts from the Gao deposition

16   are attached hereto as Exhibit A.

17   5.    Gao did not produce any personal bank statements following her deposition as agreed.

18   6.    On July 5, 2017, one week after the Committee submitted a proposed Joint Pretrial

19   Stipulation incorporating comments from Gao's counsel pursuant to Local Bankruptcy Rule 7016-

20   1(b), counsel for Gao emailed a proposed set of Exhibits A through P for use at trial.  The exhibits

21   consist primarily of personal bank statements, checks, wire transfers, and a prepared summary of

22   transactions.  The documents were not produced during discovery and were not otherwise available

23   from the Debtor.

    I declare under penalty of perjury under the laws of the United States of America that the

24   foregoing is true and correct.

25

    Executed this 24th day of July, 2017, at San Francisco, California.

26

27                                                _/s/ Gail S. Greenwood_____
                                                  Gail S. Greenwood

28

# EXHIBIT A

Page 1

1              UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                 LOS ANGELES DIVISION

4

5    In re:

6    LIBERTY ASSET MANAGEMENT              Case No.

     CORPORATION, a California             2:16-bk-13575-TD

7    corporation,

                                           Chapter 11

8              Debtor and

               Debtor in Possession.

9

     OFFICIAL UNSECURED CREDITORS

10   COMMITTEE FOR LIBERTY ASSET

     MANAGEMENT CORPORATION,

11

               Plaintiff,

12

               Vs.

13

     LUCY GAO, an individual, and

14   BENJAMIN KIRK, an individual,

15             Defendants.

     ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

16

17

18              DEPOSITION OF LUCY GAO

19              Los Angeles, California

20              Wednesday, April 19, 2017

21

22

23

24   Reported By:

     Jeanese Johnson, CSR No. 11635, CLR, LCR

25   Job No. 122296

1    Q.   Okay.

2         The first is a check from Sunshine

3    Valley to Lucy Gao, dated February 1st, 2012, in

4    the amount of $140,000.

5         Is that your signature on behalf of

6    Sunshine Valley?

7    A.   Yes.

8    Q.   And are you the Lucy Gao that it is

9    paying to the order of?

10   A.   Yes.

11   Q.   Do you know what this check was for?

12   A.   I don't remember.

13   Q.   Is there anyone who would know?

14   A.   Well, I'll check my bank account.

15   There might be.  Because you guys also subpoenaed

16   my personal bank and can tell where the money

17   goes.

18        MS. GREENWOOD:  Objection; move to

19   strike as nonresponsive.  And no, we did not

20   subpoena any personal statements of any kind.

21        Those have not been produced, and so

22   we don't have any personal records that are -- as

23   part of our record.

24        So my question to you remains whether

25   you have any information as to what this was for.

1              And is the answer no?

2       A.  Well, like I said, I will look at my

3  bank statements.  As of this moment, I don't know

4  how to answer you, why this issued to my

5  personal, go to my personal account.

6       Q.  Did you ever perform any work for

7  Sunshine Valley that Sunshine Valley would need

8  to pay you?

9       A.  Well, like I said, I don't recall,

10  you know, must be have reason, you know, deposit

11  to my account, but like I said, I will look at my

12  bank statement.

13       MR. CANTOR:  Can I just ask a quick

14  question?

15       If you were to look at your bank

16  statement, okay, what would you be looking for to

17  determine why $140,000 check would have been made

18  to you?  What would be on the bank statement that

19  would refresh your recollection?

20       THE WITNESS:  Oh, well, basically,

21  the reason it deposit to my account must be go to

22  somewhere, so I know it goes to where, so I can

23  know why they issued the check to me at that

24  moment.

25       Q.  So why do you believe that this check

1  would go somewhere as opposed to simply going to

2  Lucy?

3       A.  Like I said, I don't -- I cannot

4  answer your question now because I didn't see my

5  bank statement.  All the check I wanted to get a

6  copy, I can go back looking for that account.

7       Q.  But as counsel has just indicated, by

8  looking at your statement, I'm trying to

9  understand what that's going to show.

10       And are you suggesting that the money

11  was going to go somewhere else?

12       A.  Yeah, maybe through my account it

13  goes to other LLC or pay to Liberty something.

14  That's very possible.

15       Q.  And why did money go through your

16  account to another LLC?

17       A.  I don't know at this moment you ask

18  me, but that -- at that moment must be have some

19  reason.

20       Q.  Can you think of any reason today why

21  any money would go through your account to an

22  LLC?

23       A.  I don't want to guess.  I want to see

24  the bank statement before I say it.

25       Q.  But without guessing, you can't give

1   me any indication as to why money would go

2   through your account to an LLC?

3           MR. WADE:   That's what she just

4   answered.

5           THE WITNESS:   I cannot answer you

6   today, I said already.

7           MS. GREENWOOD:   Okay.   I'm just

8   making sure that's clear.

9           So --

10          MR. CROCKETT:   May I ask one question

11  on this line?

12          You just said you have bank

13  statements, you have personal bank statements for

14  these periods; is that right?

15          THE WITNESS:   Yes, of course.

16          MR. CROCKETT:   And you have all of

17  them, but you just haven't produced them?

18          MR. WADE:   That's what I think

19  someone subpoena already, I believe.

20          MR. CROCKETT:   No.

21          MS. GREENWOOD:   No one has subpoenaed

22  your personal accounts.

23          THE WITNESS:   Oh.   Well, yeah, I do

24  have them.

25          MR. CROCKETT:   Okay.   So you do have

1   them and they are available for production,

2   right?

3               THE WITNESS:  Yeah.  If needed.  If

4   necessary.

5               MR. CROCKETT:  Okay.  Thank you.

6       Q.  Really the same question is for this

7   next check.  It's a check on behalf of Sunshine

8   Valley LLC payable to Lucy Gao.

9               Is that your signature on behalf of

10  Sunshine Valley?

11      A.  Yes.

12      Q.  And this is a check in the amount of

13  $790,000?

14      A.  Yes.

15      Q.  Would you -- am I correct that saying

16  that as we sit here today, you have no

17  information as to why this check was written?

18      A.  I cannot answer you now because like

19  I said, I have to look for any bank statement,

20  maybe through my bank statement the next day or

21  go to other account, so it must be a reason, yes.

22      Q.  And what possible reason can you

23  think of without guessing?

24      A.  I don't want to guess.  I don't want

25  to say anything today.  I want to look at my bank

1    statement.  I can answer you.

2              Just like, you know, saying I took

3    the HK Grace Building $8.5 million, I give very

4    good answer to you to all the other attorney --

5    to all the other attorneys.  I can explain all

6    the money, in and out, and I can explain.

7         Q.  Do you believe that this money

8    remained with you personally?

9         A.  I don't think so.

10        Q.  The next check, this is Check Number

11   8443, also on behalf of Sunshine Valley LLC

12   payable to Lucy Gao.

13             Is that your signature on behalf of

14   Sunshine Valley?

15        A.  Yes.

16        Q.  And do you have any information as to

17   why $890,000 was paid to you in October of 2012?

18        A.  I answer the same question.  I don't

19   know.  I need to look at my bank statement.

20        Q.  The next check is for $900,000, also

21   in October 2012.

22             Is that your signature on behalf of

23   Pacific Sunshine Investment LLC?

24        A.  Yes.

25        Q.  Do you have any information today as

Page 105

1   to why that was paid?

2        A.   No.   I need to look at my bank

3   statement, I can answer you more properly to

4   answer you.

5        Q.   The next check is number 1103?

6        MR. CANTOR:   Hold on, wait, wait.

7   I'm sorry, I don't -- we're going to get lost

8   here.

9        So going back to that check for

10  $900,000, on the bottom there seems to be an

11  endorsement.   Is that your endorsement?

12       THE WITNESS:   No.

13       MR. CANTOR:   So where it says Lucy

14  Gao Seh, that's not your handwriting?

15       THE WITNESS:   No, that's why I said I

16  need to looking for my bank statements.

17       MR. CANTOR:   Do you --

18       Q.   Who do you think endorsed this check

19  that's for $900,000 if it wasn't you?

20       A.   Looks like maybe Elisa's handwriting.

21  Looks like, okay.   I don't know.

22       MR. CANTOR:   Did you authorize her to

23  sign your name?

24       THE WITNESS:   I don't know, but it's

25  deposited, you know.

1       Q.   Well, did you authorize her to make

2   deposits to your account?

3       A.   I don't really remember now you ask

4   me.  But at that time, you know, it's my name,

5   probably deposit to my account.  They went to the

6   bank.  They sign my became name on the back.

7       Q.   Were there many people that you had

8   making deposits to your personal account?

9       A.   Yeah.

10      Q.   How many people made deposits to your

11  personal account in 2012?

12      A.   Accounting department, they went to

13  the bank.

14      Q.   And you have no information as to why

15  the accounting department went to the bank to

16  deposit money to you personally?

17      A.   Well, like I said, I don't have bank

18  statement, I don't know how to answer your

19  question now.  I need to look at my own bank

20  statement, I can answer you all the big check,

21  where money to go.

22      Q.   Looking to the next check, and this

23  one is from Liberty Asset Management Corporation.

24  It's from the account 12 -- ending in 1242.

25           Is that your signature on behalf of

Page 107

1   Liberty?

2        A.  Yes.

3        Q.  It's for $20,000 even?

4        A.  Yes.

5        Q.  Is there any reason that you would

6   have been paid $20,000 even on that date?

7        A.  I don't recall now.  But like I said,

8   I need to refer all these numbers, go to my bank

9   statement, I can make clearly where money took

10  off.

11       Q.  Did you receive a paycheck from

12  Liberty in 2012?

13       A.  I don't think so that time.  Like I

14  said, I don't recall.  I need to look at it.

15       Q.  So sitting here today, you don't

16  think that that is a paycheck?

17       A.  Like I said, I don't know.  I need to

18  look at my bank statement.

19       Q.  Did you sign your own paycheck?

20       A.  Sometimes I sign.  I believe so.

21       Q.  Did you prepare the checks for your

22  own paychecks?

23       A.  No.

24       Q.  Who prepared them?

25       A.  Accounting.

Page 123

1    signatory?

2         A.  I think I have another one.

3         Q.  Also at Mega Bank?

4         A.  No.  East/West Bank.

5         Q.  So as I understand it, you have a

6    joint personal account at Mega Bank?

7         A.  Um-hmm.

8         Q.  And an individual account at

9    East/West Bank during the period of 2012 to 2013;

10   is that correct?

11        A.  That's right.

12        Q.  Did you also have a joint account of

13   any kind at East/West Bank after 2012?

14        A.  No.

15        Q.  And just to confirm before we leave

16   Exhibit 16:  As we sit here today, you have no

17   information as to why these were paid to you?

18        A.  No information.  I need to review my

19   own bank statement where money to go.

20        Q.  So I would like to return briefly to

21   Exhibit 1, that was the FDIC application.

22             Now, as I understand it, you did not

23   prepare the information that -- or you did not

24   prepare the actual physical application; is that

25   correct?

Page 228

1    question.

2              Is that okay, Ms. Gao?

3         A.  Sure.

4         Q.  Okay.

5              So if you were to provide us with

6    your bank statement where the $8.5 million was

7    transferred to from the joint account, all these

8    disbursements would be shown; correct?

9         A.  Yes.

10        Q.  Okay.  And how soon can you produce

11   those to us?

12        A.  I believe I send to my attorney.  I

13   can look for my e-mail one more time.

14        Q.  Okay.

15             MS. GREENWOOD:  And will you agree to

16   produce those?

17             THE WITNESS:  Yes.

18             MS. GREENWOOD:  Okay.

19        Q.  So what we're talking about are

20   really two bank accounts here.  We're talking

21   about the joint bank account that ends in 258

22   that you deposited this into as well as the bank

23   account you transferred it to where the proceeds

24   then went out to the third parties.

25        A.  Yes, I can provide.

1        Q.   You can do that?

2        A.   Yes, I can provide is.

3        Q.   Okay.  And how long would it take you

4   to do that?

5        A.   I can give me a couple days, I can

6   put together.  I may have in the computer

7   already.

8        Q.   Okay.  And so --

9            MR. WADE:  Counsel, I'm unavailable

10   for the next two weeks, so if she provided them

11   to me tomorrow, I would not be able to forward

12   them on for two weeks.

13            MS. GREENWOOD:  Well, can you provide

14   it to the lawyer that's representing you in the

15   other case, the Hong case?

16            I mean, there's other cases and

17   you're not the only lawyer that's representing

18   her, so I'm just wondering if we can just get it

19   to another lawyer who can then get it to Gail.

20            MR. WADE:  I'm representing her in

21   this case and this is where the deposition is.

22            MR. CANTOR:  Okay.  So we're not

23   going to get it for another couple weeks?

24            MR. WADE:  Correct.

25            MR. CROCKETT:  Great.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

150 California Street, 15th Floor, San Francisco, CA 94111

A true and correct copy of the foregoing document entitled:

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION IN LIMINE TO EXCLUDE EVIDENCE**

**DECLARATION OF GAIL GREENWOOD IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION IN LIMINE TO EXCLUDE EVIDENCE**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)*: July 24, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- William Crockett     wec@weclaw.com, ksa@weclaw.com
- Gail S Greenwood     ggreenwood@pszjlaw.com, rrosales@pszjlaw.com
- Jeremy V Richards     jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- Timothy J Silverman     tsilverman@scheerlawgroup.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Stephen R Wade     srw@srwadelaw.com, reception@srwadelaw.com
- James S Yan     jsyan@msn.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:

On *(date)* **July ____, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 24, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

**Via Personal Delivery**
Honorable Ernest M. Robles
U.S. Bankruptcy Court, Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560 / Courtroom 1568
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| JULY 24, 2017 | HUNG PHAN | /s/ Hung Phan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1